UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

JAN 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JOHN and Heidi Frasca

35 Paucek Rd.

Buxton ME  04093


V.

Case: 1:08-cv-00107
Assigned To : Unassigned
Assign. Date : 1/18/2008
Description: Civil Rights-Non-Employ.


DEFENDANTS


State of Maine,  (c/o Attorney General doing business from 6 State House Station, Augusta, Maine 04333-0006.

Defendant John Baldacci, #1 State House Station, Augusta, Maine 04333-0001

Defendant G. Steven Rowe, 6 State House Station, Augusta, Maine 04333-0006

Defendant Office of the Attorney General, (office and any and all other personnel, divisions, etc. within the State of Maine Attorney General's Office) , 6    State House Station, Augusta, Maine 04333-0006

Defendant Rep. Don Marean, 233 Bonney Eagle Rd.  Hollis Maine 04042

Defendant Seth Bradstreet III, Maine Department of Agriculture, 28 State House Station, Augusta Maine  04330

Defendant Marilyn Stavros, York County District Court, 11 Chases Pond Rd., York Maine 03909

Defendant Christine Foster, Biddeford District Court, 25 Adams St., Biddeford Maine

**RECEIVED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

04005

Defendant Norma Worley,  28 State House Station, Augusta, Maine 04333

**Defendant Christine Fraser,  28 State House Station, Augusta, Maine**

04333

Defendant Mike Grovo , 185 Portland Rd., Buxton, Maine 04093

Defendant Jody Thomas, 185 Portland Rd., Buxton, Maine 04093

Defendant Kimberly L. Emery, 185 Portland Rd., Buxton, Maine 04093

Defendant Kathryn Jones, 25 Adams St., Biddeford, Maine  04005

Defendant Rick Record, Administrative Office of the Court, 171 State House Station,

Augusta Maine  04333

Defendant Jessica Christensen, District Attorney's Office, Biddeford District Court, 25

Adams St., Biddeford, Maine 04005

Defendant Mark Lawrence, York Probate Court, P.O. Box 399, Alfred, Maine 04002-0399

**Defendant Maine Department of Agriculture, 28 State House Station, Augusta, Maine**

04333

**Defendant Augusta Maine Animal Welfare Department, 28 State House Station, Augusta,**

**Maine 04333**

**Defendant Rae-Ann Malcolm, 28 State House Station, Augusta, Maine 04333**

Defendant Town of Buxton , is (c/o Town Manager), 185 Portland Rd.,

Buxton Maine  04093

Defendant Carol Ann McKinnon, The Animal Welfare Society, Post Office Box 43, West

Kennebunk, Maine, 04094

Defendant The Animal Welfare Society, Post Office Box 43, West Kennebunk, Maine,

04094

Defendant Lindsay Hamrick, Monadnock Humane Society, PO Box 678, Route 10, West

Swanzey, New Hampshire 03469

Defendant Monadnock Humane Society, PO Box 678, Route 10, West Swanzey, New

Hampshire 03469

Defendant Westbrook Animal Refuge League,  449 Stroudwater St., P.O. Box 336,

Westbrook, Maine 04092

Defendant Andrew Ferreira,  is hereby sued in his individual and official capacity jointly and severally doing business from Westbrook Animal Refuge League, 449 Stroudwater St., P.O. Box 336, Westbrook, Maine 04092

Defendant Susan Britt is hereby sued in her individual and official capacity jointly and severally doing business from Westbrook Animal Refuge League, 449 Stroudwater St., P.O. Box 336, Westbrook, Maine 04092

Defendant New Hampshire SPCA, PO Box 196, Stratham, NH 03885

Defendant Francine Keating, The Animal Welfare Society P.O.Box 43  West Kennebunk Maine 04094

**Defendant Bill Speed,  The Animal Welfare Society  P.O.Box 43  West Kennebunk Maine 04094**

Defendant Alex Sanborn,  Westbrook Animal Refuge League, 449 Stroudwater St., P.O. Box 336, Westbrook Maine 04092 and as former Town of Buxton ACO (Animal Control Officer).

Defendant Ned R. Porter,  The Department of Agriculture, 28 State House Station Augusta Maine 04330

Defendant Teri Robinson,  Happy Tails Dog Day Care, 119 Bishop St., Portland Maine 04103

Defendant Robert Fisk, MFOA, 190 US Rte. 1 Falmouth Maine 04105

Defendant Steve Jacobsen,The Animal Welfare Society P.O.Box 43 West Kennebunk Maine 04094

**Defendant Department of Administrative & Financial Services, Division of Leased Space,** Burton M. Cross Building, 4ᵗʰ Floor, 77 State House Station, Augusta, Maine 04333-0077;

**Defendant Theredsa A. Bilodeau, Department of Administrative & Financial Services,** Division of Leased Space, Burton M. Cross Building, 4ᵗʰ Floor, 77 State House Station, Augusta, Maine 04333-0077;

**Defendant Rebecca M. Wyke, Department of Administrative & Financial Services,** Division of Leased Space, Burton M. Cross Building, 4ᵗʰ Floor, 77 State House Station, Augusta, Maine 04333-0077;

Defendant William B. Leet, Department of Administrative & Financial Services, Division
of

Leased Space, Burton M. Cross Building, 4th Floor, 77 State House Station, Augusta, Maine
04333-0077;

Defendant Happy Tails, Inc.119 Bishop Street, Portland, ME 04102;

Defendant Frank Billings, Happy Tails, Inc., 119 Bishop Street, Portland, ME 04102;

Defendant Tru Brit Reality, 17 Woodbury Street, South Portland, ME 04106;

Defendant Tom Coward, 17 Woodbury Street, South Portland, ME 04106;

Defendant Department of Administrative & Financial Services, Division of Purchases, 74
State House Station, Augusta, ME

04333-0074;

Defendant Elizabeth Somers, 28 State House Station Augusta Maine 04333

Defendant Wayne R. Douglas is hereby sued in his individual, official capacity jointly and
severally doing business from 447 Main Street, Springvale, Maine 04083

Defendants Jane and John Does 1 through 20,000 as their identities become known.


# COMPLAINT


Our complaint is that we have had our entire livelihood and business stolen from us
UNDER COLOR OF LAW with a VOID BLANK WARRANT withno due process. WE have
never been convicted of any crimes, we are innocent people, conducting a legitimate business
and were targeted by racketeers who stole everything we own leaving us penniless. The warrant
did not have affidavits attached nor did it have a complaint attached yet the police in our town
came in in swat gear woke us out of bed and served it that way with 100 people ready to seize all
our property. The warrant listed only CANINES yet they stole everything in sight.......they
stole things belonging to my children not named on the VOID warrant putting my daughter out
of her nursing college career because they stole her laptop with her college studies on it. They

stole animals that were not canines and they stole our beloved family pets leaving us absolutely devastated. They took every scrap of paper in the house including bank records, thirty five years of breeding records and we cannot get a fair impartial hearing here in Maine as the courts are corrupt. We had a lawsuit in the Federal court in Maine and my husband is now a fugitive because the court let the State Court take precedence and hold a Kangaroo court and put out an arrest warrant. They ignored our VOID AB INITIO and all our other filings and now are threatening us. WE desperately need help.

I would like the court to give back all my property and punitive damages listed in the lawsuit for all the due process violations, grief and suffering inflicted on us.

Thank you,

Diane Frasca

The undersigned Movant hereby files her Motion for Writs of Prohibition and Removal of State Case to the U.S. District Court. She respectfully cites to the Court the landmark case of Haines v. Kerner, United States Supreme Court, 30 L Ed 2d 652, 404 US 519, 92 S Ct 594, rehearing denied, 30 L Ed 2d 811, 405 US 94, ( 1972 ), which stands for the well established principle that pleadings prepared by a pro se litigant are not held to the same stringent standard as those prepared by an attorney. Your undersigned Movant is a Pro Se in Proper Person litigant. **She is not attorneys**. **She has no legal training.**

Further, if she has requested the wrong relief, she respectfully requests the Court / Your Honor to treat her pleadings as if she has requested the proper relief. If she fails to include the proper allegations, she respectfully requests the Court / Your Honor to construe her pleadings as if she had. In this manner, her pleadings can be construed or interpreted so as to do substantial justice, as the Rules of Procedure require.

**WHEREFORE,** the Plaintiff, Heidi Frasca as Sovereign Persons coming into the court under the 13th Amendment to the United States of America Constitution respectfully submits her Motion for Writs of Prohibition and Removal of State Case to the U.S. District Court

**DATED:**        November 19, 2007

*Heidi Frasca*
_____

Heidi Frasca, Petitioner, In Propria Persona, NonAttorney
Litigant, Whistleblower, / Discriminated Against Disenfranchised
Sovereign Person / Victim )
35 Paucek Road
Buxton, Maine  04093
Tel:  603-447-9201

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

Heidi Frasca & John Frasca                    CASE NO. _____
35 Paucek Road
Buxton, Maine  04093
Tel:  603-437-7333
        **Plaintiffs/Whistleblowers/PRO SE**

                                              CIVIL RIGHTS ACT 42:1983; NATURE OF SUIT 440
                                              CIVIL RIGHTS: OTHER;
v.                                            DEMAND FOR JURY TRIAL

State of Maine is hereby sued in its state capacity jointly and severally and individually (c/o
Attorney General doing business from 6 State House Station, Augusta, Maine 04333-0006.

Defendant John Baldacci is hereby sued in his official and individual capacity jointly and
severally doing business from #1 State House Station, Augusta, Maine 04333-0001

Defendant G. Steven Rowe is hereby sued in his official and individual capacity jointly and
severally doing business from 6 State House Station, Augusta, Maine 04333-0006

Defendant Office of the Attorney General (office and any and all other personnel, divisions,
etc. within the State of Maine Attorney General's Office) is hereby sued in its state capacity
jointly and severally doing business from 6 State House Station, Augusta, Maine 04333-0006

Defendant Rep. Don Marean is hereby sued in his individual and official capacity jointly and
severally doing business from 233 Bonney Eagle Rd.  Hollis Maine 04042

Defendant Seth Bradstreet III is hereby sued in his individual and official capacity jointly
and severally doing business from Maine Department of Agriculture, 28 State House Station,
Augusta Maine  04330

Defendant Marilyn Stavros is hereby sued in her individual and official capacity jointly and
severally doing business from York County District Court, 11 Chases Pond Rd., York Maine
03909

Defendant Christine Foster is hereby sued in her individual and official capacity jointly
and severally doing business from Biddeford District Court, 25 Adams St., Biddeford Maine

Page 2 of 38 – Frasca, All Rights Reserved, None Waived

04005

Defendant Norma Worley is hereby sued in her official and individual capacity jointly and severally doing business from 28 State House Station, Augusta, Maine 04333

Defendant Christine Fraser is hereby sued in her official and individual capacity jointly and severally doing business from 28 State House Station, Augusta, Maine 04333

Defendant Mike Grovo is hereby sued in his official and individual capacity jointly and severally doing business from 185 Portland Rd., Buxton, Maine 04093

Defendant Jody Thomas is hereby sued in her official and individual capacity jointly and severally doing business from 185 Portland Rd., Buxton, Maine 04093

Defendant Kimberly L. Emery is hereby sued in her official and individual capacity jointly and severally doing business from 185 Portland Rd., Buxton, Maine 04093

Defendant Kathryn Jones is hereby sued in her official and individual capacity jointly and severally doing business from Office of Clerk of Court, 25 Adams St., Biddeford, Maine 04005

Defendant Rick Record is hereby sued in his official and individual capacity jointly and severally doing business from Administrative Office of the Court, 171 State House Station, Augusta Maine 04333

Defendant Jessica Christensen is hereby sued in her official and individual capacity jointly and severally doing business from District Attorney's Office, Biddeford District Court, 25 Adams St., Biddeford, Maine 04005

Defendant Mark Lawrence is hereby sued in his official and individual capacity jointly and severally doing business from York Probate Court, P.O. Box 399, Alfred, Maine 04002-0399

Defendant Maine Department of Agriculture, Food and Rural Resources is sued in its state capacity jointly and severally doing business from 28 State House Station, Augusta, Maine 04333

Defendant Augusta Maine Animal Welfare Department is hereby sued in its state capacity jointly and severally doing business from 28 State House Station, Augusta, Maine 04333

Defendant Rae-Ann Malcolm is hereby sued in her individual and official capacity jointly and severally doing business from 28 State House Station, Augusta, Maine 04333

Defendant Town of Buxton is hereby sued in its state and municipal capacity jointly and severally doing business from Buxton Town Offices (c/o Town Manager), 185 Portland Rd., Buxton Maine  04093

Defendant Carol Ann McKinnon is hereby sued in her individual and official capacity jointly and severally doing business from The Animal Welfare Society, Post Office Box 43, West Kennebunk, Maine, 04094

Defendant The Animal Welfare Society is hereby sued in its private, municipal and official capacity jointly and severally doing business from Post Office Box 43, West Kennebunk, Maine, 04094

Defendant Lindsay Hamrick is hereby sued in her individual and official capacity jointly and severally doing business from Monadnock Humane Society, PO Box 678, Route 10, West Swanzey, New Hampshire 03469

Defendant Monadnock Humane Society is hereby sued in its private, municipal, and official capacity jointly and severally doing business from PO Box 678, Route 10, West Swanzey, New Hampshire 03469

Defendant Westbrook Animal Refuge League is hereby sued in its private, municipal and official capacity jointly and severally doing business from 449 Stroudwater St., P.O. Box 336, Westbrook, Maine 04092

Defendant Andrew Ferreira is hereby sued in his individual and official capacity jointly and severally doing business from Westbrook Animal Refuge League, 449 Stroudwater St., P.O. Box 336, Westbrook, Maine 04092

Defendant Susan Britt is hereby sued in her individual and official capacity jointly and severally doing business from Westbrook Animal Refuge League, 449 Stroudwater St., P.O. Box 336, Westbrook, Maine 04092

Defendant New Hampshire SPCA is hereby sued in its private, municipal and official capacity jointly and severally doing business from PO Box 196, Stratham, NH 03885

Defendant Francine Keating is hereby sued in her individual and official capacity jointly and severally doing business from The Animal Welfare Society P.O.Box 43  West Kennebunk Maine 04094

Defendant Bill Speed is hereby sued in his individual and official capacity jointly and severally doing business from The Animal Welfare Society  P.O.Box 43  West Kennebunk Maine 04094

Defendant Alex Sanborn is hereby sued in her individual and official capacity jointly and severally doing business from Westbrook Animal Refuge League, 449 Stroudwater St., P.O. Box 336, Westbrook Maine 04092 and as former Town of Buxton ACO (Animal Control Officer).

Defendant Ned R. Porter is hereby sued in his individual and official capacity jointly and severally doing business from The Department of Agriculture, 28 State House Station Augusta Maine 04330

Defendant Teri Robinson is hereby sued in her individual and official capacity jointly and severally doing business from the Happy Tails Dog Day Care, 119 Bishop St., Portland Maine 04103

Defendant Robert Fisk is hereby sued is his individual and official capacity jointly and severally doing business from the MFOA, 190 US Rte. 1 Falmouth Maine 04105

Defendant Steve Jacobsen is hereby sued in his individual and official capacity jointly and severally doing business from The Animal Welfare Society P.O.Box 43 West Kennebunk Maine 04094

Defendant Department of Administrative & Financial Services, Division of Leased Space is hereby sued in its state capacity doing business from Burton M. Cross Building, 4th Floor, 77 State House Station, Augusta, Maine 04333-0077;

Defendant Theredsa A. Bilodeau is hereby sued in her individual and official capacity jointly and severally doing business from Department of Administrative & Financial Services, Division of Leased Space, Burton M. Cross Building, 4th Floor, 77 State House Station, Augusta, Maine 04333-0077;

Defendant Rebecca M. Wyke is hereby sued in her individual and official capacity jointly and severally doing business from Department of Administrative & Financial Services, Division of Leased Space, Burton M. Cross Building, 4th Floor, 77 State House Station, Augusta, Maine 04333-0077;

Defendant William B. Leet is hereby sued in his individual and official capacity jointly and severally doing business from Department of Administrative & Financial Services, Division of Leased Space, Burton M. Cross Building, 4th Floor, 77 State House Station, Augusta, Maine

04333-0077;

Defendant Happy Tails, Inc. is hereby sued in its corporate, municipal, state capacity jointly and severally doing business from 119 Bishop Street, Portland, ME 04102;

Defendant Frank Billings is hereby sued in his individual and official capacity jointly and severally doing business from Happy Tails, Inc., 119 Bishop Street, Portland, ME 04102;

Defendant Tru Brit Reality is hereby sued in its corporate, municipal, and state capacity doing business from 17 Woodbury Street, South Portland, ME 04106;

Defendant Tom Coward is hereby sued in his individual and official capacity jointly and severally doing business from 17 Woodbury Street, South Portland, ME 04106;

Defendant Edwin R. Porter is hereby sued in his individual, official capacity jointly and severally doing business from Maine Department of Agriculture, Food & Rural Resources, 28 State House Station, Augusta, Maine 04333-0028;

Defendant Department of Administrative & Financial Services, Division of Purchases is hereby sued in its State capacity doing business from 74 State House Station, Augusta, ME 04333-0074;

Defendant Elizabeth Somers is hereby sued in her individual, official capacity jointly and severally doing business from 28 State House Station, Augusta, Maine 04333;

Defendant D. Brock Hornby is hereby sued in his individual, official capacity jointly and severally doing business from 156 Federal St., Portland, ME 04101

Defendant George Singal is hereby sued in his individual, official capacity jointly and severally doing business from 156 Federal Street, Portland, ME 04101

Defendant Wayne R. Douglas is hereby sued in his individual, official capacity jointly and severally doing business from 447 Main Street, Springvale, Maine 04083

Defendants Jane and John Does 1 through 20,000 as their identities become known.


## PRELIMINARY STATEMENT

Plaintiffs / Whistleblowers and In Propria Persona Litigants, Heidi and John Frasca in Proper Person reserve the right to amend this judicial brief without permission of the court and sue the above captioned defendants, individually, jointly, severally and in their official capacity,

and demand a trial by jury within the mandated eighteen ( 18 ) month time constraint mandated by the Federal Rules of Civil Procedure, the Locak Rules & other authorities.

**ALLEGATION  STATEMENT**

**UPON CLEAR & CONVINCING, INCONTROVERTABLE, PRIMA FACIE EVIDENCE, the defendants' own actions, acts, etc. & upon** other information & belief the above captioned MOVANTS / WHISTLEBLOWERS, PLAINTIFFS, IN PROPRIA PERSONA, DISCRIMINATED AGAINST, DISENFRANCHISED U.S. / SOVERIGN PERSONS / VICTIMS, Heidi & John Frasca to the best of their knowledge & upon good faith states, alleges, re-alleges, deposes & makes a part hereof all of the following in formations / statements, etc. & any & all other statements made prior to the filing of this lawsuit.

1.      This action is brought by the Plaintiffs / Whistleblowers / Pro Se litigants for actual, compensatory and punitive damages and for the return of all plaintiffs' property. It is also being brought to remedy a wanton and depraved disregard for personal property, lawless behavior and/or conduct by State Officials and others including but not limited to law enforcement officers of the Buxton Police, Judges, District Attorneys, Maine Attorney General, and other Jane and John Does that deprived Heidi Frasca and John Frasca (hereinafter "Frascas") of rights, privileges or immunities secured or legally protected by the United States of America Constitution and Amendments, Civil Rights and Human Rights and the laws of the United States of America.

2.      These specifically include but are not limited to those rights, privileges and immunities found in and secured and/or protected by the United States of America Constitution & laws of the United States of America including the (1st ) First, ( 4th ) Fourth, ( 5th) Fifth,  ( 8th ) Eighth & ( 13th ) Thirteenth Amendments to the United States Constitution. They include also the Constitutional right to be protected from wanton and depraved color of law crimes, domestic terrorism, including federal, state, county & local domestic terrorism, conspiracy, collusion, criminal threats, coercion, intimidation, extortion, negligence, malicious First Amendment Retaliation targeting, discrimination, disenfranchisement, destruction of personal property, theft of property, failure to protect, failure to train, failure to investigate, legal fiction, false, fraudulent & forged charges to cover-up the defendants crimes, acts, actions, retaliation, etc., wanton & depraved cruel and unusual punishment, the intentional infliction of mental, emotional,

psychological, and financial distress, harm, damage, psychological rape, as well as the filing of legal fiction, false, fraudulent, & forged perjured instruments/instruments, documents, perjury and subornation of perjury, libel, slander, malfeasance, misfeasance, nonfeasance, moral turpitude, misprision of felony, and other innumerable Federal, State, Civil, Constitutional, etc. crimes too numerous to name at the present time but that will be named.

3.    **Judicial Notice Brief & Memorandum of Law:**    Your Undersigned Plaintiffs / Whistleblowers / Pro Se Litigants, the Frascas, are not attorneys. They never attended law school. They are In Propria Persona Whistleblowers / plaintiffs / litigants. They therefore attach hereto & make a part hereof their Memorandum of Law In support hereof; it is incorporated herein by reference, Haines v. Kerner U.S. SUPREME COURT, (1972) et seq.

4.    As Your Honor is well aware, this landmark decision stands for the well-established principle that the pleadings prepared by a pro se litigant are not held to the same stringent standards as those prepared by a lawyer. Plaintiffs / Whistleblowers / In Propria Persona Litigants thus respectfully request the Court to take judicial notice and judicial knowledge of this decision and universally applied and recognized principle of law.

5.    Furthermore, the Plaintiffs / Whistleblowers / In Propria Persona Litigants also request This Honorable Court to take judicial notice of the fact that it is an ancient maxim of equity that "The Record Should Speak The Truth ".

6.    This maxim of equity and principle of law is so widely applied and universally recognized that it requires no citation of authority. A proper application of this maxim in the instant civil action requires that the Trier of Fact, the Tribunal, recognize the Defendants and their agents, employees and representatives have in fact filed legal fiction, false, fraudulent, forged & perjured-, fabricated reports. This includes but is not limited to pseudo official police reports, probable cause reports, forms, photographs and the like for the criminal intent & purpose of covering up their crimes, criminality, corruption & their attack upon the Frascas.

7.    This was a major part of their malignant and deliberate conspiracy formed, established and carried out with wanton & depraved malice, intent & aforethought, against Your Undersigned Plaintiffs / Whistleblowers / In Propria Persona Litigants.

## DEMAND FOR TRIAL BY JURY, Rule 38

8.    Plaintiffs, the Frascas, hereby demand, to be given a Trial by Jury within eighteen

(18) months as mandated by the Federal Rules of Civil Procedure, the Local Rules & other authorities. Plaintiffs, the Frascas, hereby demand their right to Trial by Jury pursuant to the Seventh Amendment and Rule 38(a), (b) and (c), which bars the court from making any factual determinations of any claims and reserves all factual findings to be made by the jury, "the trier of fact," *see* Rule 50, 1991 Amendment, Rule 38 provides:

> Rule 38, Jury Trial of Right

> (a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.

> (b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by (1) serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after service of the last pleading directed to such issue, and (2) filing the demand as required by Rule 5(d). Such demand may be indorsed upon a pleading of the party.

> (c) Same; Specification of Issues. In the demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable. If the party has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

## JURISDICTION & VENUE

9.     This action arises under the ( 1st ) First, ( 4th ) Fourth, ( 5th) Fifth, ( 8th ) Eighth & ( 13th ) Thirteenth Amendments to the United States Constitution and Title 42 U.S. Code Annotated, §1983, Title 48 U. S.C. § 1983 in where Defendants did jointly, severally and individually & in their official capacity continually conspire to deprive and did deprive and deny the Frascas both their procedural due process and their substantive due process and their Civil and Constitutional & Human Rights under (-Color of Law-), U.S.C. Title 18 Sec. 241, U.S.C. statues anointed, etc. including the memorandum of the United Nations declarations of Human Rights, etc. and other such statues, etc. to be named at a later date.

10.     This Court has jurisdiction of this action under 28 U.SC. §§ 1331, 1343 (3) and (4) this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights,

and by 18 U.S.C. § 1964.

11.    Plaintiffs' claim for declaratory and injunctive relief is authorized by Title 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

12.    The Plaintiffs further invoke this Court's pendent jurisdiction, pursuant to Title 28 U.S.C. § 1367(a), over any and all-state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

13.    Venue is proper for the United States District Court for the District of Columbia pursuant to Title 28 U.S.C. § 1391 (b)(1)(2) and (c), and Title 18 U.S.C. § 1965 (a)(b)(c) because this case can be heard in any U.S.District Court due to the fact that the issues are Property and U.S. Constitutional violations.  Plaintiff's have a right to an impartial hearing of their case which they cannot get in the U.S. District Court in Maine.  Federal Rules of Law provide that they may go to another venue when U.S. District Court judges in their own arena have committed fraud upon the court and treason against their oath of office in obstructing justice to shield those parties violating the Frasca's due process rights.

## PLAINTIFF

14.    Plaintiff the Frascas, are sovereign persons currently  residing in the State of Maine, doing business from 35 Paucek Road, Buxton, Maine  04093 and coming into the court under the 13th Amendment.

## DEFENDANTS'
## BACKGROUND OF EVENTS GIVING
## RISE TO THIS CIVIL ACTION

15.  **In 2001** John and and Heidi Frasca purchase Paucek Kennels a 23 acre parcel of commercial land on Rte. 22 (Long Plains Rd.) in Buxton Maine with 2 apartments (used as rentals), a doublewide mobile home and a 176  foot long X 22 foot wide concrete kennel building with in and outdoor kennel runs.  All kennels have heavy gauge chain link.  Inside kennels have automatic watering systems which John Frasca installed upon moving to the property.  He made other improvements on the building and all inside kennels are separated from

each other by concrete walls to prevent fence fighting. Outside runs are separated by heavy steel panels to prevent the same. The outside runs are 6 ' X 16 ' and the inside runs are 6' x 8' as this was a kennel built in the 1960's for large breed hunting dogs.

16. For the first couple of years in Maine things went smoothly. The Animal Welfare Department sent out an agent named Jeanine Wilson who lives in the Town of Buxton to inspect our kennel and it was Jeanine who informed the Frascas that they needed to have a kennel license to breed and board dogs. Nobody had informed the Frascas that a license was required until Jeanine had come to inspect. At the time the Frascas were doing a small amount of boarding that Robert Paucek, the prior owner had had going on before he sold the kennel and since there was enough room the Frascas kept it going. The Frascas paid for the proper licenses ie. Boarding and Breeding with the state and as is required with the town they had a vet come in and do rabies vaccinations and then proceeded to go to the Town Offices in Buxton to pay for the licensing fee for the year as is required with the town.   Municipal licensing requires having your rabies vaccinations done and then an inspection with the town ACO (animal control officer). This is just a walk through inspection of your facility and the Frascas had always had NO PROBLEM with this.

17. **On or about the end of 2003**. There appeared to be a pattern developing in that a large number of unsubstantiated complaints were supposedly being given to the animal welfare agents though no such complaints were filed with the Maine Attorney General's office. All complaints were investigated by animal agents who found no basis for the complaints.

18. Agents stopped coming to investigate the complaints and a woman who identified herself as CHRISTINE FRASER, the state vet, started coming out to investigate which we thought was odd. Christine Fraser hereinafter referred to as Fraser used to work for the Scarborough Downs Racetrack as their vet. She treated horses with the wrong medications according to sources at the track and made false sexual harassment charges against a male worker who was later cleared.

19. **On or about summer 2004** Fraser placed a quarantine on our kennel for 3 weeks due to a Papillon puppy that had become ill after it was sold with the zoonotic protozoan GIARDIA. GIARDIA is one of the number one protozoans in the world and is usually found in standing water. The Frascas spent thousands of dollars using $80.00 a gallon ROCCAL D by the order of Fraser rather than the $1.29 gallon bleach which the state used when they seized the Frascas kennel and occupied it for almost 2 entire months. A medicine called PANACUR was given to

each dog and puppy in the kennel for 5 consecutive days and finally after their vet did Snap Giardia tests the protozoan was eliminated from the kennel. An animal welfare agent came in and did testing to confirm. J'aime Kennels still uses PANACUR for 5 consecutive days on every puppy that ever leaves the premises. It is an expensive medication costing $400.00 a gallon and it also was ordered by Fraser when the scientific information says that METRONIDAZOLE a much cheaper medication is just as effective. ALL of this is to HURT THE BREEDER MONETARILY. IT IS PART OF THE RACKETEERING AGENDA. FIRST to target the poor, then to target those that may have sick family members, and then to make you use your funds. They also made the Frascas have GIARDIA fliers printed up and Chapter 745 of Maine LAW printed up....all of which is unconstitutional. All of this under the permission and watchful eyes of Seth Bradstreet III, Ned Porter, Norma Worley and Chris Fraser.

20. **On or about summer 2004** a Mini Aussie pup was sold to a woman named Laura Gould from New Hampshire. She never completed the sale. Later it became evident through accidental internet browsing that she was involved with animal activists and attempting to close our kennel down by soliciting people to file legal fiction, false, fraudulent, & forged complaints that had no constitutional standing with the Attorney Generals Office (G. Steven Rowe and Mark Randlett) and the Consumer Mediation Division in Maine through a Yahoo Group called "East Coast Aussies". The Frascas made copies of all these conversations and this woman and all of her contacts by name and it was clear their message was that complaints in numbers would get the state to feloniously, unconstitutionally & conspiratorially close down the Frasca kennel which these animal rights domestic terrorists termed a "PUPPYMILL". The state & its' officials also stole also took these documents from our home.

21. **On or about early summer 2005** the Animal Welfare Department in Augusta Maine with Norma Worley as it's Director and Seth Bradtreet III as her boss, the Commissioner of Agriculture and Ned Porter as the Deputy Commissioner, sent the Frascas a letter informing them that a PROGRAM called the HELP FIX ME PROGRAM funded by all the licensed breeders in the state would take effect in October 2005. It would mean that every puppy sold unsprayed or unneutered would cost the breeder a $25.00 fee due to be paid to the state of Maine on monthly report sheets This is an unconstitutional law because breeding animals is a "natural" right and cannot be taxed by anyone. IN OTHER WORDS TAXATION WITHOUT REPRESENTATION. This is official state domestic terrorism / " racketeering ", threats,

coercion, intimidation, black mail & official oppression, the state was threatening to put all the breeders out of business if they did not pay this fee. This fee would pay for the state to fund low income spay and neuter programs. Heidi Frasca immediately called the state and requested the list of the licensed kennels in the state from Norma Worley's secretary Beth. Several requests were made before the list was sent. Heidi Frasca WAS AMAZED TO SEE THERE WERE ONLY 47 licensed kennels in the ENTIRE state of Maine out of thousands.

22. This information started a dialogue with Norma Worley by e-mail and several e-mails back and forth transpired which were also stolen from the Frascas home by the state (theft of property). This is felonious, unconstitutional & conspiratorial abuse of power, illegal search and seizure and VIOLATING THE FRASCAS 4th amendment rights.

23. Rep. Don Marean was contacted about the HELP FIX ME PROGRAM and how it affected the Frascas in a negative way and several back and forth e-mails transpired between the 2 parties which were also taken from the Frascas home by the state. Illegal search and seizure and 4th amendment rights transgressed yet again. He also as the Frascas rep. in their district was contacted in late 2007 after the seizure and was asked to attend a meeting with other Senators on the issue and he declined. He is now the Racing Commissioner and he stated that he fully supports the Animal Welfare Department and refused to help investigate what is his duty to investigate for the people in his district. He was informed of the racketeering several times and refused to do anything about it and turned a deaf ear. In fact he has an office in that department. Marean is guilty of misprision of felony, and knowingly aiding and abetting the United States Constitutional rights violations done to the Frascas.

24. **On or about fall 2005** one of the Frasca Papillon dogs wandered away from the house and after an extensive search Heidi Frasca called the Police Department in Buxton and told them she was missing. She was given the number of the Buxton ACO *(Alex Sanborn)* to call and she called and left a message with a description of the dog. The next day she received a call back from Alex Sanborn saying that she had found the dog and would bring it over to the kennel. Since Heidi Frasca had printed up fliers with a reward of $50.00 and distributed them with her daughter she decided to give the reward to Alex Sanborn. Heidi Frasca was going to be out so she gave the $50.00 to her daughter Jaime to give to Alex Sanborn. Alex Sanborn took the money and the Frascas got their dog back. Over a year later Heidi Frasca found out that Police Officers and their employees are not supposed to take money offers.

25. Eventually a group of breeders formed and a meeting on the issue of the HELP FIX ME
PROGRAM was scheduled for January 2006 at State House Station in Augusta Maine.

26. On or about mid summer 2005 Fraser, the state vet increased her visits to the Frasca kennel
insisting on seeing sales records, vaccination records, health records etc. even though there were
no complaints prompting this action. She insisted that the Frasca sales contract be changed
around to meet her, Fraser's, specifications. Fraser is not a partner in the Frasca business and
does not own any of the Frasca kennel dogs. This is a clear case of using her official position to
interfere with interstate commerce. Fraser further insisted that 6 months of our sales contracts be
printed or copied at our expense and given to the state with the threat that we would lose our
breeding license if we did not comply. This is extortion, intimidation, threats and constitutes
official oppression. Immediately Heidi Frasca e-mailed and called Norma Worley who is
Fraser's boss and the director of the Animal Welfare Department. Norma Worley e-mailed back
that we would definitely have to comply with this or we would risk losing our breeding license.
This is again official oppression, this time by Norma Worley under color of law. Worley also
told Heidi Frasca the same thing on the telephone. The Frascas had the contracts copied at
Staples and complied under threat, duress, and coercion.

27. **In January 2006** the meeting with the Animal Welfare Department and the legislators on
the REPEAL of the HELP FIX ME PROGRAM took place and John and Heidi Frasca spoke at
the meeting. Rep. Don. Marean and Norma Worley were present. At the meeting Norma
Worley stated that she wanted all the licensed breeders to help her to find all the unlicensed
breeders and send them to her by e-mail and phone if they could. Meanwhile the licensed
breeders would have to continue to pay the surcharge til October of 2006. This is discrimination.
It is unconstitutional to pay a tax on a repealed law yet that is the reason that Norma Worley
gave for the revoking of the Frascas license at one point. Later it changed to another legal
fiction, false, fraudulent & forged reason.

28. Heidi Frasca sent Norma Worley over 150 unlicensed kennel names in January 2006 by e-
mail and she did not want them. She actually said to STOP SENDING THEM IN AN E-MAIL
to Heidi Frasca. **"WIRE FRAUD"** This e-mail also was **stolen** from the Frasca home by the
state. Heidi Frasca was confused about what the actual motive was. She suspected Christine
Fraser at the time had a hidden agenda towards the Frasca kennel.

29. As 2006 progressed visits from Fraser continued with more legal fiction, false, fraudulent & forged complaints and when Heidi Frasca would ask Fraser who the complainant was Fraser would tell her that she had absolutely NO RIGHT TO KNOW WHO THE COMPLAINANT WAS. The United States of America Constitution / Bill of Rights & other authorities states that one has a constitutional right to face their accuser. Fraser insisted upon the Frascas giving her another years of worth of contracts and under threat of losing their breeding license the Frascas were forced to comply. This time however it was obvious there was a hidden agenda that the state had in asking for the contracts as the e-mails between Heidi Frasca and Norma Worley had gotten quite heated but again these e-mails were without probable cause, stolen from the Frasca home by Norma Worley, the State and the Buxton Police Department under the direction of Jody Thomas the Chief of Buxton Police. During one of Frasers visits to the Frasca kennel Norma Worley accompanied her and checked out the kennel.

30. On or about September 2006 Fraser came to the Frasca kennel on another legal fiction, etc. complaint claiming a German Shepherd dog was very ill. She did not know that Heidi Frasca had just that very morning spoken with the owner and had asked the owner if she had taken the dog outside of it's crate to move around the yard since the dog had not moved it's bowels and the owner had taken it to their vet and the vet had said it had an obstruction in the intestines. As soon as Heidi Frasca suggested this to the owner the owner did this with the puppy and the puppy produced a bowel movement thus eliminating the obstruction and the complaint. Fraser did not know this but came to the kennel eager to have yet another reason to complain. Heidi Frasca told Fraser this and had words with Fraser and told her to STOP HARASSING THEM.

31. **In October of 2006** Heidi Frasca sent her annual $75.00 kennel license fee by check to the state and the check was cashed yet NO LICENSE WAS EVER SENT TO THE FRASCAS.

32. Heidi Frasca e-mailed Norma Worley asking where her license was and Norma Worley said her license was being revoked because of her inability to pay the 2 or 3 months of surcharges on the REPEALED HELP FIX ME PROGRAM. Heidi Frasca had sent several letters to Norma Worley during the summer of 2006 telling her that funds were very tight because John Frasca had been diagnosed with Hepatitis C and diabetes following a motorcycle accident and the family had no health insurance and bills were mounting. The Frascas had paid the surcharges up to that point but were unable to keep up with the amount with their mounting expenses and Heidi Frasca asked Norma Worley by e-mail for a payment plan. Norma Worley promised her a

Page 15 of 38 – Frasca, All Rights Reserved, None Waived

payment plan yet never delivered it. She revoked her breeding license and ignored the Frascas instead. Heidi Frasca kept e-mailing Norma Worley about her license and asking if it was revoked because of complaints. Norma Worley told Heidi Frasca that she only had 11 complaints against her in the Attorney Generals office consumer mediation division in 6 years. Norma Worley said she would work with the Frascas as far as a payment plan several times yet after many e-mails to her by Heidi Frasca asking for that payment plan it never came. All of those e-mails were stolen, without probable cause, by Norma Worley, Jody Thomas and the Buxton Police on 8/21/07.

33. **In late January 2007** Alex Sanborn, the ACO in Buxton came to the Frasca kennel for her annual inspection after Heidi Frasca had had Blackstrap Hills Veterinary Clinic do the rabies vaccines for the kennel for the year. When Heidi Frasca went to the town offices to pay for the license she was told she had to wait for Alex Sanborn to do her inspection. Alex Sanborn called Heidi Frasca and set up an appointment to come and do the inspection. Heidi Frasca had found some very disturbing things on the internet that Alex Sanborn had written to people soliciting complaints about the Frasca kennel and so Heidi Frasca did not trust Alex Sanborn.

34. Alex Sanborn arrived at the kennel at 3:00 in the afternoon in late January 2007 and came into the kennel office where Heidi Frasca had decided to ask her why she was soliciting complaints on the internet and trying to cause problems with her kennel. Heidi Frasca also reminded Alex Sanborn she had accepted a reward in the past and did she recall that?? Heidi Frasca then took a phone call and Alex Sanborn stepped outside the kennel office door and returned with a Buxton Police officer. Heidi Frasca told Alex Sanborn she was not going to use a Buxton Police Officer to intimidate her during the annual inspection which is exactly what Alex Sanborn what attempting to do. Heidi Frasca ordered them both to leave and Alex Sanborn threatened Heidi Frasca with the revoking of her municipal kennel license if she did not allow the inspection to continue. This was abuse of power and threatening Heidi Frasca with a badge and gun by bringing in the Police Officer. Clearly unconstitutional. Heidi Frasca said absolutely "NO". They Left.

35. Heidi Frasca got on the phone and called the Chief of Police, Jody Thomas and told her what had just transpired. Jody Thomas told Heidi Frasca on the phone that Alex Sanborn had always spoken highly of the kennel and had always said the kennel was clean and the dogs were well taken care of. She also said that she would speak to Alex about setting up a date to accompany

her on another inspection. Heidi Frasca does not have to allow a Police Officer to accompany the ACO on an inspection of her kennel. This is domestic terrorism, intimidation by the Town of Buxton and the Police Department of Buxton. Again a violation of the Frascas rights.

36. Alex Sanborn called Heidi Frasca back and another date was set up for the Chief of Police, Jody Thomas and Alex Sanborn to come and inspect the kennel together. The day came about a week after the first time Alex had come and the two spent about 3 hours going over every single dog in the entire kennel documenting everything about each one. This is entirely different from every other year we had ever been inspected. Alex Sanborn presented Heidi Frasca with a 3 page document requesting lineage on the dogs, euthanasia records, dogs bought and sold, puppies purchased for the kennel to use for breeding and other information etc.. Heidi Frasca asked Jody Thomas the Chief of Police about the document in her office one day in early February after they were given to her and Jody Thomas told her that it was required by the town for this document to be done. Heidi Frasca then took the document to the town clerk and asked if this was required of anyone else and she said she had never seen anything like it before. This is discrimination & disenfranchisement. This document was completely foreign to her. Heidi Frasca knew this was not right.

37. Heidi Frasca called the selectmen and waited for their return phone calls. When the return phone calls came she requested a meeting with the selectmen to discuss the injustice of being discriminated against and intimidated by a Buxton Police Officer during a routine inspection of her kennel.

38. **On or about mid to late February 2007** John and Heidi Frasca met with the Buxton selectmen led by Chairman Jean Harmon and the Buxton Chief of Police, Jody Thomas. At the meeting John and Heidi Frasca told the selectmen all the problems that had arisen with trying to obtain their kennel license with the town and the requirements that they had been given by Alex Sanborn, the ACO and Jody Thomas, the Chief of Police. They were told at the meeting by Jody Thomas that the state was requiring the town to take over the responsibilities of Animal Welfare regulations and basically Jean Harmon, the chairman of selectmen backed her up on everything and the Frascas had no resolve to any of their problems at the meeting. Anything the Police Chief said was accepted by the selectmen as truth. Here again all of the Frascas inalienable Civil, Constitutional & Human rights were violated by the town and Jean Harmon the

chairman of selectmen was backing up the injustice of the intimidation by the police department of Buxton on Buxton citizens.

39.    The Police Chief told the selectmen that another kennel inspection was needed at the Frasca kennel to inspect the building now that the inspection of the animals had been done.  The Frascas went home frustrated and feeling very discriminated against as well as intimidated.

40.  The next day the Frascas decided that they would not allow themselves to be stalked, menaced, harassed, intimidated, black mailed &/or discriminated against by the town of Buxton and they felt that now it was connected to the state situation somehow.  They had had a previous complaint late in 2006 during which Christine Fraser, the state vet and the Buxton ACO Alex Sanborn, had shown up together at the Frasca kennel together and Heidi Frasca started putting two and two together; it was another fishing expedition.  Heidi Frasca had written an e-mail to Norma Worley asking her if the ACO's had anything to do with State employees at that time and received an answer back from Norma Worley stating that the ACO's did not have anything to do with the state employees. So needless to say the Frascas now were becoming suspicious of this now that they were experiencing trouble with the town as well.

41.  The Frascas refused to allow the town of Buxton to perform another inspection and Heidi Frasca went down to the town offices and tried to pay for her kennel license and was refused.

42.  **On or about February 2007** Heidi Frasca received a phone call from a customer named Debbie Faulkner who lives in Deerfield, NH.  She had purchased 3 Mini Aussies from the kennel and she had just received a phone call from Fraser, the state vet.  Fraser had called her and started talking to her about the Frasca kennel asking her if she knew if the Frasca kennel was an illegal pet store from Massachusetts and that they now ran a filthy puppymill in Maine.  She said that the state of Maine was trying to shut down the puppymill and was slandering the Frascas to Debbie Faulkner who knew that none of it was true.  Debbie Faulkner immediately got off the phone and called Heidi Frasca.

43.  Heidi Frasca called Norma Worley who told her not to bother her with nonsense hearsay. She said that if she there were any allegations against one of her employees then Heidi Frasca had better have the proof.  Heidi Frasca called Debbie Faulkner back and asked her to both call Norma Worley and to write a letter to her which she did.  Norma Worley did nothing further about the incident.  It was clear the Frasca kennel was being set up for something.  The Frascas were being stalked, menaced, harassed, etc

44. Meanwhile Heidi Frasca still waited for her response from the state regarding her kennel license and finally asked for an administrative hearing on the issue. She waited and did not get a response. Three more e-mails to Norma Worley and the department of agriculture with Seth Bradstreet III as her boss, were sent out before she received a response. Norma wrote an e-mail to Heidi Frasca stating that she would give a date for an administrative hearing within 30 to 90 days.

45. Heidi Frasca went looking for an attorney. She finally retained Mike Montembeau at the Law Firm of Smith, Elliott, Smith & Garmey in Saco Maine. She went to see him in early March 2007 with her daughter Jaime and two of her sisters, Cyndy and Robin. At the first meeting he stated that he would immediately put a cease and desist on the town and the state and all five of the women heard him state that fact. Later he would deny he said that.

46. Mike Montembeau's first order of business from the Frascas was to get all discovery that was to be used in the hearing against the Frascas. This order was put in to the state in March 2007.

47. The discovery of the Frasca case did not arrive until two days before the hearing date and Mike Montembeau called the Frascas and told them he needed to see them to go over some things. The Frascas were very upset that it had taken so long to get the discovery and that they were expected to prepare in two days with discovery they had waited four months to receive. They asked Mike Montembeau to re-schedule the hearing and the date was scheduled for July 18th. Mike Montembeau then dropped the bomb. He told the Frascas that all the evidence was blackened out. He told Heidi Frasca their were over 80 complaints when in fact the Maine Attorney General's office has only 6 complaints in seven years. This constitutes forgery of documents. The reason for the seized sales contracts then became clear. Fraser had seized them in order to make up complaints because they hadn't found any other way to shut down a legitimate business. Heidi Frasca had asked Mike Montembeau specifically not to accept a date for the hearing unless it was far enough away to give the Frascas the same respect of time to prepare for the case with their discovery as it had taken the state to deliver it to them. He had definitely not done that. He had been specifically asked to not accept a date close to receiving the discovery and he had done exactly that. Now with blackened out evidence the Frascas decided that it was a KANGAROO COURT. The United States of America Constitution

mandates that you have a right to face your accusers and ask them questions. So this "evidence" was unconstitutional. They decided not to appear before the Kangaroo court where they knew what the results would be as they had already done their research on the Animal Welfare Department and found that it is a predetermined result.

48. **ON JULY18th** Mike Montembeau appeared for the hearing and Asst. Attorney General Mark Randlett told Norma Worley when she presented him with the blackened out evidence "Get your act together and come back in September". A couple of days later an article appeared about the hearing in the ***BANGOR DAILY NEWS*** where this was quoted. This newspaper article put the Frascas in touch with a lot of people in Maine that had been accosted and in fear of the Animal Welfare Department. Heidi Frasca has since requested all HER REAL COMPLAINTS FROM THE ATTORNEY GENERAL G. STEVEN ROWE and there are only 6 complaints in 6 years in Maine. He has been informed many times of the racketeering in Maine and in fact is a part of it and thus is a part of this lawsuit. He was sent letters and court filings by green card return receipt requested asking him to STOP the racketeering and investigate the theft of our property UNDER COLOR OF LAW as is his obligation and he refused to do his job.

49. GOVERNOR BALDACCI was also informed by letter and court filings by green card return receipt requested by the Frascas and others of the racketeering and theft of property UNDER COLOR OF LAW and he refused to do anything about it as is his obligation and so he is condoning and is a part of the racketeering. This is misprision of felony.

50. It became known to the Frascas that Norma Worley was a member of HSUS/PETA an organization known to the FBI as a domestic terrorist group. They are animal rights people known to be very vicious and cruel. Norma Worley had come from the state of CA with several lawsuits following her…one that had cost the state of CA one million to settle for racial discrimination. The state of Maine had also had over seven hundred animal complaints during the first year Worley headed the Maine Animal Welfare Department. Owners were being criminally charged if they objected to the theft of their property by the animal rights domestic terrorists. Such charges are not possible under the law because animals are property. A corrupt court system, however, actually conducted trials where there had been prior unconstitutional searches of property and where property had been taken without warrants. This constitutes treason upon the officials' oath of office and criminal acts against the defendants.

51. On or about 8/2/07 Fraser, Officer Mike Grovo, a Buxton Police Officer and an

Animal Welfare agent named Rae-Ann Malcolm drove past the Frascas CONSTITUTIONAL NO TRESPASSING SIGN without a warrant. They continued past the kennel building into the paddock area of the kennel and up into the area near the kennel office. John Frasca saw them from the house and went running out of the house. Heidi Frasca followed him. Mike Grovo had exited his police cruiser and the two women had exited their car as well. John asked them if they had a warrant to be on his property and a warrant to pass his sign. Mike Grovo said NO. John Frasca told them they had to leave and that they were conducting an unconstitutional search of his property since the women Fraser and Rae-Ann Malcolm were walking around inspecting the kennel runs with the dogs in them. Fraser said that since the hearing we were still a licensed kennel and that she had a right to be on the property and check on the status of the dogs and that our attorney had said it would be fine if they came to do an inspection. Our attorney we later found out had said that they could do an inspection ONLY IF HE WAS PRESENT and WE GAVE PERMISSION. WE DID NOT AGREE TO THIS BECAUSE WE WERE DENIED A LICENSE and ONLY WHEN IT BENEFITED THE STATE DID THEY SAY WE WERE A LICENSED KENNEL. The remainder of the time we were not a licensed kennel. You cannot be both.

52. John kept insisting that they all leave and so did Heidi Frasca when she arrived on the scene. Mike Grovo refused to leave the Frasca property and intimidated John with his badge and gun forcing John to show identification on his own legally owned property where no crime had been committed.

53. Finally they all left. On 8/9/07 the Frascas filed a "WHISTLEBLOWER" INTENT TO SUE on 9 people/parties.

54. The INTENT TO SUE was filed against the intruders, their supervisors, the municipality who pays Grovo and the Department of Agriculture as well as the State of Maine who pays and is responsible for the training and conduct of their employees.

55. **In the early morning hours of 8/21/07** the Buxton Police led by Mike Grovo wearing swat gear raided the Frasca home. John Frasca was outside on the deck and there were about 4 or 5 police cruisers. He said to Mike Grovo, "You need 2 search warrants". Mike Grovo shoved one Void/Blank warrant into John Frascas chest and said, "You have been served, get out of my way". The warrant did not have any affidavits attached nor did it have any complaint attached. Mike Grovo was one of the people who had been served with the Intent To Sue so he was

committing First Amendment retaliation, domestic terrorism & "racketeering" against a whistleblower by being on the Frasca property. The Police officers went into the Frasca home and literally dragged the rest of the family from their beds still in their underwear and sleepwear and forced them out onto the deck in front of all the other officers. Then they allowed the Frascas to go and use the bathroom. Mike Grovo made the Frascas 26 year old daughter Jaime perform her morning urinary function with the door open and her hands in front of her like it was a drug raid. Meanwhile another officer, a female did the same to Heidi Frasca. She told Heidi Frasca to go back outside without dressing and Heidi Frasca refused and put a pair of pants on anyway. This female officer had swat gear on also. When the family was all back outside on the deck Chief of Police, Jody Thomas came up to the deck and said to them, "WE are not just here to seize your dogs, we are here to seize your property as well." John Frasca asked the police if the family could please leave as he did not want them to be there to witness the painful excrutiating, violation of their natural rights, civil, constitutional, human & property rights. The family had committed no crimes, this was a clear case of FIRST AMENDMENT RETALIATION ON WHISTLEBLOWERS and criminal retaliation against the Frascas because they chose to take advantage of their United States of America Constitutional right through the use of Redress of Grievances in a court of law by filing the law suit against this band of State organized criminal racketeers. Chief of Police Jody Thomas is also one of the people who is on the INTENT TO SUE and she was clearly committing a felony against the family and using her gun and badge to threaten and commit crimes against the Frascas.

56. Keep in mind that no warrant could have been issued after the illegal/unconstitutional search the racketeers had already conducted. The property was posted with a Constitutional No Trespassing sign, the animals are property, and no crimes had been committed. Yet Judge Marilyn Stavros of the York District Court actually signed one. That means that the judge had no jurisdiction and that she immediately lost her immunity to prosecution under the law. It further means that every person who followed her NULL and VOID WARRANT also violated their oath of office which is treason. The law is clear: First, no judge can sign a warrant based on Fruit of the Poisonous Tree unconstitutional searches. The VOID/BLANK warrant was served without prior notice, without due process, there was no just compensation and where an illegal/unconstitutional search and armed home invasion has been conducted without benefit of necessary warrants. Second, The state Supreme Courts have held that those who aid, abet,

advise, act upon and execute the order of a judge who acts without jurisdiction are equally guilty. They are equally guilty of a crime against the U.S. Government.

57.  60 to 70 people followed the Buxton Police onto the property.  Norma Worley and Fraser along with their various domestic terrorist helpers and agents.

58.  John Frasca watched the invasion for the entire first 2 days of the theft of the Frasca property without benefit of a warrant.  He saw his animals not being fed, cleaned or watered and it made him sick to his stomach.  He watched while his horse and steer were loaded onto a trailer and taken away and they were not even listed on the illegal warrant.  Only canines were listed on the warrant.  A tactic of the domestic terrorists is to let the animals starve and dehydrate them for several days.  In the case of the Frasca kennel there was an automatic watering system.  The racketeers shut it off for 3 or 4 days in the summer heat AND THEN THEY PUT DOWN PANS OF WATER AND CALLED IN THE MEDIA TO SEE THE THIRSTY DOGS DRINK WATER OUT OF THE PANS.  The media cannot be present during a raid and this raid went on for two months with an armed guard stationed before the kennel day and night.  The Frasca dogs don't need pans of water if the water system is left on.  They were left in their feces and urine with all those "animal welfare people" just standing around.  Not one person lifted a pooper scooper to clean.  Then the media was allowed to film that as well.  Meanwhile not one independent person has been allowed inside the kennel building since the racketeers took over and an armed guard was stationed 24 hours a day in front of the kennel to keep the Frascas off their own property.  Not one independent vet has been allowed to view the dogs.  Cars from all over the country have been all over the Frasca property since day one of the invasion stealing dogs as this is the modus operandi of the racketeers.  Heidi Frasca knows this as she has access to thousands of hits to her websites on IP addresses before the raid.  The racketeers make deals with people on the dogs ahead of time.  The Frascas have license plates of hundreds of cars on the property.

59.  The racketeers stole items from the Frasca children who were not named on the warrant. They stole the children's personal dogs, computers, cameras, paperwork microchip system, nursing and veterinary books from the children.  They took the beloved family pets, computers, laptops, cameras, every business piece of paper in the house, personal records, stamped mail, wall telephones, checking account records, bank account records, personal files and much more.

Since when are such items "Canines"?  They stole everything from the kennel.  Cages, crates, medicines, grooming supplies and much more.

60.  Steve Jacobsen, Bill Speed, Francine Keating, Carol Ann McKinnon are all manager personnel for the Animal Welfare Society in West Kennebunk Maine which participated in the theft and racketeering of the Frasca animals.  They house many of the dogs still.  The Animal Welfare Society itself plans to sell the Frasca dogs.  Carol Ann McKinnon is guilty of much slander and libel in the newspapers and television as well as by internet.  Articles collected by the Frascas prove this.  Many of this shelters employees trespassed on the Frascas land and stole the Frascas property.  These people have all committed crimes against the Frascas by being involved with the theft of the Frascas property and having received stolen property and trespassing on PRIVATE property.

61.  Andrew Ferreira, Susan Britt and Alex Sanborn all work at The Animal Refuge League in Westbrook Maine.  Andrew Ferreira and Susan Britt hold managerial positions and Alex Sanborn is the former Buxton ACO and now the small animal handler for the Refuge League.  This Refuge League is also heavily involved in the racketeering and theft of the Frasca dogs with personnel and people from their shelter having been on the Frasca property and now they house many of the Frasca dogs with intent to sell those stolen dogs.  These people have all committed crimes against the Frascas by being involved with the theft of their property and having received stolen property and trespassing ON PRIVATE POSTED property.

62.  Lindsay Hamrick from the Monadnock Humane Society is guilty of domestic terrorism, racketeering and theft of the Frasca dogs ( a.k.a. private property) and knowingly trespassing on PRIVATE Posted property.

63.  The Monadnock Humane Society itself and its employees are guilty of violating the Frascas U.S. Constitutional rights because when citizens are in collusion with State officials to commit deprivation of rights, they are held accountable for those violations in the same manner as the state officials.  They knowingly trespassed on PRIVATE POSTED property and stole private property.

64.  The NH SPCA from Stratham NH itself and it's employees are guilty of racketeering and theft of the Frasca dogs and knowingly trespassing on PRIVATE POSTED property.

65.  There will be other Humane Societies named in this lawsuit that are involved in the racketeering and theft of the Frasca dogs as they become known.

66.  On August 2007 Judge Marilyn Stavros signed a VOID unconstitutional warrant based upon an unconstitutional search (Fruit of the Poisonous Tree) which violated the Frascas constitutional rights and Marilyn Stavros herself committed acts of treason against the Frascas after she was made aware of the prior illegal search via a VOID AB INITIO filed with the court on August 21, 2007.  Marilyn Stavros committed treason when she had a notice to take permanent possession of non-canine animals that had already been seized on August 21, 2007 taped to the Frascas door on August 28th, 2007 by a Buxton police officer rather than have it served in person to the Frascas. The Frascas arrived home late that day to find that notice and had LESS than 24 hours to respond to that same notice.  The Frascas filed a recusal on Marilyn Stavros on August 29th before 1:00 on August 29th before she could take permanent possession of the non-canine animals and the corrupt court placed Judge Christine Foster on a case where she had NO JURISDICTION as a VOID AB INITIO had been filed on AUGUST 22nd, 2007 with a 24 HOUR RETURN of stolen property and had been ignored by the Biddeford District Court.

67.  Kathryn Jones, the clerk of the court stamped that unconstitutional warrant with her stamp. Rick Record is Kathryn Jones boss and he knowingly authorized Kathryn Jones to repeatedly commit treason against the Frascas throughout the history of the court document filings as she repeatedly placed her stamp on all of the documents knowing that the documents were VOID but stamping them with the court stamp in an effort to make it look as though the documents were valid.

68.  Mark Lawrence is the District Attorney and the boss of Jessica Christensen and both committed repeated acts of treason upon the Frascas by allowing evidence to be allowed in court after the VOID AB INITIO and the MOTION IN LIMINE had been filed thus violating all of the Frascas constitutional rights.  Both are officers of the court and lawyers and are well aware that because of the original unconstitutional search, no warrant could be issued against the Frascas. They knew it was their duty to drop all unconstitutional charges against the Frascas and refuse to prosecute them.

69.  Mark Lawrence further compounded the felonies he committed against the Frascas when after he was informed that the Frascas had filed a law suit naming him, he wrote up another 19 animal cruelty charges against John Frasca and had the court issue a nationwide arrest warrant for John Frasca.  This is a clear attempt to further besmirch John Frasca's reputation and is First Amendment retaliation against a Whistleblower.

70.  Jessica Christensen who is the District Attorney and was prosecuting the Frasca case committed multiple acts of treason upon the Frascas by allowing evidence to be allowed in court after the VOID AB INITIO and the MOTION IN LIMINE had been filed thus violating all of the Frascas constitutional rights.

71.  Kimberly Emery, a Buxton police officer is guilty of U.S. Constitutional rights violations and theft of the Frasca property, intimidating with a badge and gun, violating the Frascas constitutional rights and trespassing on private property without a warrant.

72.  Judge Christine Foster continued to rule on a VOID case where she had no jurisdiction and where she was knowingly, willingly, with malice, intent and aforethought committing treason and criminal acts against the Frascas.  The Court is guilty of a failure to train and in allowing corrupt judges to continue to operate in that court.

73.  In further violations of the Frascas U.S. Constitutional rights, the Department of Administrative & Financial Services, Division of Leased Space, Theredsa A. Bilodeau, Rebecca M. Wyke, and William Leet joined in the conspiracy to deprive the Frascas of their legally owned property by using State of Maine funds to hire a facility to house the Frascas' stolen property.  That means all of them and their department are aiding and abetting the theft under color of law of the Frascas legally owned property.  All of these state officials have committed treason.

74.  Happy Tails, Inc. and its president, Frank Billings, are aiding and abetting the theft of the Frascas legally owned property by providing a storage area for the stolen property.  This is a felony under the law.

75.  Tru Brit Reality and Tom Coward assisted in locating housing for stolen property and have thereby conspired to deprive the Frascas of their legally owned property in that they took an active role to find a facility to house stolen goods.

76.  Edwin R. Porter signed off on the facility agreement to have Happy Tails, Inc. house stolen property so he has knowingly, willingly, aided and abetted the deprivation of rights and U.S. Constitutional violations committed against the Frascas which is itself a felony.

77.  The Department of Administrative & Financial Services, Division of Purchases has provided the funding to continue the violation of the Frascas rights by allowing the money to rent space to keep the Frascas stolen property from them.

78.  Elizabeth Somers has taken part in violating the Frascas' rights and has presented a bill to the Frascas for her part in stealing their legally owned property.

79.  Norma Worley, Christine Fraser and the other persons who conspired to remove legally owned property from the Frascas have also presented the Frascas with a bill for over $867,000 so that the thieves can be paid by the Frascas for stealing and housing the Frascas stolen property.

80.  D. Brock Hornby and George Singal have violated their Oath of Office to uphold the U.S. Constitution and Federal laws by refusing to provide the Frascas with relief clearly within their jurisdiction.  They both claim ignorance of their job and in fact misquoted the law in order to aid and abet those conspirators who stole the Frascas' property under color of law using a VOID/Blank warrant (Please see the Appendix with Judge Hornby's Order) and please note that the Court Clerk quoted George Singal as saying he could not move the State case to the U.S. District Court and that the Frascas *MAY* need to send a separate petition to Singal to have the case moved.  Please note that paragraph 12 is in the law suit submitted to Singal just as it is in this law suit and says:

> *12. The Plaintiffs further invoke this Court's pendent jurisdiction, pursuant to Title 28 U.S.C. § 1367(a), over any and all-state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.*

81.  Wayne R. Douglas issued a Void arrest warrant for John Frasca when John Frasca did not participate in a fraudulent court action believing first that the case had been removed to the U.S. District Court in Bangor, Maine and second knowing with certainty that the State court never had jurisdiction as everything was Void on the case the moment it was done due to the original unconstitutional search and the Fruit of the Poisonous Tree affidavits done by those persons who had conducted that unconstitutional search as the basis for the issuing of the seizure warrant.

82.   The United States Supreme Court has clearly, and repeatedly, held that any judge who acts without jurisdiction is engaged in an act of treason. *U.S. v. Will*, 449 U.S. 200, 216, 101, S. Ct. 471, 66 L.Ed. 2d 392, 406 (1980): *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed 257 (1821).

> *The state Supreme Courts have held that those who aid, abet, advise, act upon and execute the order of a judge who acts without jurisdiction are equally guilty. They are equally guilty of a crime against the U.S. Government.*

83.    Though Heidi Frasca has not been informed of any hearing this month before the Biddeford Court, the media announced that she was being brought into the court on animal cruelty charges. This is not possible as once again, the court has absolutely jurisdiction. Everything done in this case was and is VOID.

84.    While all of this was going on, the Frascas filed for a Writ of Prohibition & Writ of Replevin in the U.S. District Court in Maine. Judge Hornby wrote that he had no jurisdiction in property and U.S.A. Constitutional rights violation cases because:

> *"Finally, I bring to the plaintiffs' attention the following federal statute, the Anti-Injunction Act. The plaintiffs have named as the sole defendant in each case a state district judge sitting in the Maine District Court in Biddeford. The Anti-Injunction Act provides:*
>
> *A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."*

85.    The Bill of Rights enacted by Congress in fact does give the U.S. District Court Original Jurisdiction in such cases. Hornby either does not know the law after sitting as a U.S. District Court judge for 17 years or perhaps has a mental aberration that has left him unable to recall the law. In any case, he failed to execute his duty.

86.    The Frascas filed their law suit including paragraph #12 (also in this law suit) which is to have the U.S. District Court remove the State issues to the U.S. District Court. Judge George Singal failed to do so. When questioned about this by Heidi Frasca, Singal's Court Clerk told Ms. Frasca there was nothing the judge would do. The judge's failure to move the case is the proximate cause of the Void warrant now issued for John Frasca. John Frasca, knowing that paragraph #12 was put into the law suit to move the case into the court which has original jurisdiction saw no reason to attend a fraudulent, VOID, case against him with a judge and court that had no jurisdiction. It is of interest to note that Judge Singal was served with a Notice of Intent to Sue in the U.S. Court of Claims by an owner with a nearly identical case to that of the Frascas. This owner is suing Singal because of fraud upon the court, treason, aiding and abetting racketeering, obstruction of justice, violation of due process rights and more. Because Heidi Frasca was concerned to get an impartial hearing of her case, she filed with the U.S. District Court asking for a judge other than Singal. Singal refused to remove himself from the case and threatened to not allow any of the Frasca future filings he thinks frivolous.

87.    Because of their experience with Judge Hornby and Judge Singal in the U.S. District Court of Maine, the Frascas believe they cannot get an informed, impartial judge in that court. Hence they are asking the Washington, D.C. U.S. District Court to take the case as is their right when they are unable to get an impartial hearing of the case within Maine.

I

## FIRST CLAIM FOR VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE SECURE IN THEIR PERSONs, HOUSE, PAPERS AND EFFECTS FROM UNREASONABLE SEARCHES AND SEIZURES WITHOUT PROBABLE CAUSE

88. Paragraphs 1 through 87 are hereby incorporated herein as if fully set forth herein.

pursuant to FRCP Rule 10.

89.    Plaintiffs' First Claim against All Defendants for violation of Plaintiffs' Fourth Amendment right to be secure in their persons, houses, papers and effects from unreasonable searches and seizures without probable cause was violated by All Defendants in furtherance of their conspiracy to commit invasion of privacy, a right clearly established since 1886, see Boyd v. United States, 116 U.S. 616, 630-31 (1886), the Supreme Court quoted the historic opinions of Lord Camden in Entick v. Carrington, which held that the Crown's use of general warrants to seize the personal property and papers of its subjects was illegal and devoid of any basis in law.  116 U.S. at 624-30.  Lord Camden explained,

> Papers are the owner's goods and chattels, they are his dearest property, and are so far from enduring a seizure, that they will hardly bear an inspection; and through the eye cannot by the laws of England be guilty of a trespass, yet where private papers are removed and carried away the secret nature of those goods will be an aggravation of the trespass, and demand considerable damages in that respect.  Where is the written law that gives any magistrate such a power?  I can safely answer, there is none; and therefore, it is too much for us, without such authority to pronounce a practice legal which would be subversive of all the comforts of society.

*Entick v. Carrington*, 19 How St. Tr. 1029, 1066 (1765).  Similarly, in our own system of constitutional jurisprudence, we require that search warrants be reasonably specific in describing what is to be seized from a person's home or office. Hence, "{t}o determine whether a warrant lacks sufficient specificity, we must examine both the warrant's particularity and its breadth."

200. The law was clearly established relating to "the invasion, by officers, into the home of innocent citizens" in *Anderson v. Creighton*, 483 U.S. 663, 107 S. Ct. 3034, 3052-53, n. 22 (1987) quoting:

> The Court's double-counting approach reflects sympathy for the plight of the officer and an overriding interest in unfettered law enforcement.  It ascribes a far lesser importance to the privacy interest of innocent citizens than did the Framers of the Fourth Amendment.  The importance of that interest and the possible magnitude of its invasion are both illustrated by the facts of this case.21  The (483 U.S. 665) home of an innocent family was invaded by several officers without a warrant, without the owner's consent, with a substantial show of force, and the law and for the rights of the family members (483 U.S. 666).  As the case comes to us, we must

assume that the intrusion violated the Fourth Amendment. See *Steagold v. United States*, 451 U.S. 204, 211, 101 S. Ct. 1642, 1647, 68 L. Ed. 2d 38 (1981). Proceeding on that assumption, I see no reason why the family's interest in the security of its own home should be accorded a lesser weight than the Government's interest in carrying out an invasion that was unlawful.22

---

22     Because this case involves the rule that should be applied to the conduct of a law enforcement officer employed by the Federal Government, Justice Jackson's dissenting opinion in *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302, 93 L. Ed. 2d 1879 (1949), is especially pertinent. He wrote in part:

"These (Fourth Amendment rights), I protest, are not mere second class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit in every heart. Uncontrolled search and seizure is one of the first and the most effective weapons in the arsenal of every arbitrary government." Id, at 180, 69 S. Ct., at 1313.

---

90.   All Defendants "conduct and behavior" in committing an unlawful invasion into Plaintiffs' home to destroy and steal Plaintiffs' property a reckless disregard for the law, and open violation of their duty to protect and serve.

II

### SECOND CLAIM FOR DEPRIVATION OF RIGHTS, PRIVILEGES AND IMMUNITIES SECURED BY THE CONSTITUTION OF THE STATE OF MAINE SECTRION

91.    Paragraphs 1 through 90 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

92.   Plaintiffs' Second Claim against All Defendants for deprivation of rights, privileges and immunities secured by the Constitution of the State of Maine, Section 4 by libel; Section 21 by taking and damaging property without first making compensation;  Section 6, and 6A by deprivation of rights, privileges and immunities, due process, liberty, and property under color of State law with intent to injure by deprivation of rights clearly established since 1871. See *Scheuer v. Rhodes*, 418 U.S. 232, 94 S. Ct. 1683 (1974) at headnote 4, which provides:

"4. States 79

When a state officer acts under state law in a manner violative of Federal Constitution he comes into conflict with superior authority of that Constitution <u>and is stripped of his official or representative character and subjected in his person to consequences of his individual</u>

conduct; a state has no power to impact to him any immunity from responsibility to supreme authority of United States. 42 U.S.C.A. § 1983; U.S.C.A. Const. Amendment 11."

93.    All Defendants knew that ride-alongs are illegal everywhere in the United States, including Maine, see *Wilson v. Layne*, 526 U.S. 603; 119 S. Ct. 1692; 143 L. Ed 2d 818, 836, n. 7, 119 S. Ct. 1692 (1999) (Justice Stevens, concurring in part and dissenting in part) 143 L. Ed 2d at 836, quoting:

(f)or the proposition that the officer's conduct was "not unreasonable" – it actually held that the defendants' motion to dismiss should have been denied because the allegations supported the conclusion that the officer committed a trespass when he allowed a third party to enter the plaintiff's property.6 Since that conclusion was fully consistent with a number of common-law cases, holding that similar conduct constituted a trespass, 7 it surely does not provide any support for an officer's assumption that a similar trespass would be lawful.

Far better evidence of an officer's reasonable understanding of the relevant law is provided by the testimony of the Sheriff of Montgomery County, the commanding officer of three of the respondents: "We would never let a civilian into a home… That's just not allowed.'" Brief for Petitioner 41.

---

7        See, e.g., *Daingerfield v. Thompson*, 74 Va. 136, 151 (1880) ("There seems, indeed, to be no principle of law better settled, and for which numerous authorities may be cited if necessary, than this: **that all persons who wrongfully contribute in any manner to the commission of a trespass, are responsible as principals, and each one is liable to the extent of the injury done**"); see also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on law of Torts § 13, p. 72 (5th ed. 1984).

---

And trespass with intent to steal under color of official right, Plaintiff's property, is heinous conduct and the causation of irreparable harm, for which the JURY can award damages for constitutional tort and state law claims.

## III

## THIRD CLAIM FOR DEPRIVATION OF FIRST AMENDMENT RIGHT OF SPEECH AND CONFRONTATION WITHOUT FEAR OF OPPRESSION AND RETALLATION UNDER COLOR OF OFFICIAL RIGHT

94.    Paragraphs 1 through 93 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

95.     Plaintiffs' Third Claim for deprivation of First Amendment right of speech and confrontation without fear of oppression and retaliation under color of official right, a clearly established right since 1987, for which the jury can award damages under common law tort and constitutional tort against All Defendants. *See Mackinney v. Neilsen*, 69 F. 3d 1002, 1006-07 (9th Cir. 1995), quoting:

> In *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). The Supreme Court instruct courts ruling on qualified immunity to examine (69 F. 3d 1007) whether the "contours of the right" at stake in the action are sufficiently clear so that a reasonable official could understand that he or she is violating the right. Several cases have outlined the "contours" of the First Amendment right to challenge the police. The Supreme Court in *City of Houston, Texas v. Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. 2d 398 (1987), invalidating a Texas county's ordinance which made verbally challenging an officer in the line of duty unlawful. The Court stated that "the First Amendment protects a significant amount of verbal cririciism and challenge directed at police officers." *Id*. At 461, 107 S. Ct. at 2509. Unless the speech is likely to produce a clear and present danger of a serious substantive evil," the Court stated, it is protected. *Id*. Indeed, the Court continued, "{t}he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state. *Id*. At 462-63, 107 S. Ct. at 2510.

IV.

## FOURTH CLAIM FOR DEPRIVATION OF PLAINTIFF'S FIFTH AMENDMENT RIGHT TO BE SECURE FROM CONVERSION OF PROPERTY TO PUBLIC USE ABSENT DUE PROCESS AND JUST COMPENSATION

96.     Paragraphs 1 through 95 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

97.     Plaintiff's Fourth Claim for deprivation of Plaintiffs' Fifth Amendment right to be secure from conversion of property to public use absent due process and just compensation against All Defendants for the conspiracy to enter property without the consent of owners to facilitate theft of farm and pet animals by "private persons" under color of official right, take photographs without first having permission of owner which states a claim cognizable under the Fifth Amendment for which the JURY can award damages and relief.

98.     Plaintiffs' rights are clearly established pursuant to *United States v. James Daniel Good Real Property*, 114 S. Ct. 492, 495-96 (1993), quoting:

*Held*:     1.          Absent exigent circumstances, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard BEFORE seizing real property subject to civil forfeiture. P 498.

          (a) The seizures of Good's property implicates two "'explicit textual source{s} of constitutional protection,'" the Fourth Amendment and the Fifth, *Soldal v. Cook County*, 506 U.S. 56, 121 L. Ed. 2d 450, 113 S. Ct. 538, 548, 1211 L. Ed. 2d 450. While the Fourth Amendment places limits on the Government's power to {114 S. Ct. 496} seize property for purposes of forfeiture, it does not provide the sole measure of constitutional protection that must be afforded property owners in forfeiture proceedings. *Gerstein v. Pugh*, 420 U.S. 203, 35 S. Ct. 854, 43 L. Ed. 2d 54; *Graham v. Conner*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443, distinguished. Where the Government seizes property, not to preserve evidence of criminal wrongdoing but to assert ownership and control over the property, its action must also comply with the Due Process Clause, e.g., *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S. Ct. 2080, 40 L. Ed. 2d. 452; *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556. Pp. 498-500.

In Plaintiffs' case there could be no exigent circumstances as the unconstitutional search of their Property was conducted 15 days PRIOR to the unconstitutional seizure of their property.


V.

FIFTH CLAIM FOR DEPRIVATION OF PLAINTIFFS' SIXTH AMENDMENT RIGHT OF
CONFRONTATION, RIGHT TO KNOW THE CHARGES AGAINST THEM, RIGHT TO
SPEEDY TRIAL, RIGHT TO HAVE COMPULSORY PROCESS FOR OBTAINING
WITNESSES IN HIS FAVOR, AND EFFECTIVE REPRESENTATION OF COUNSEL PRIOR
TO BEING CONVICTED BY CONSPIRACY BY THE STATE


99.     Paragraphs 1 through 98 are hereby incorporated herein as if fully set forth herein.
pursuant to FRCP Rule 10.

100. Plaintiffs' Fifth Claim for deprivation of Plaintiff's Sixth Amendment right of
confrontation, right to know the charges against them, right to speedy trial, right to have
compulsory process for obtaining witnesses in their favor, and effective representation of
counsel prior to being convicted by conspiracy of the State which presents a cognizable claim under the
Sixth Amendment for which the JURY can award damages and relief, *see Delew v. Wagner*, 143 F. 3d
1219, 1222-23 (9th Cir. 1998), quoting:

          {T}he Supreme Court held long ago that the right of access to the courts is a fundamental right
          protected by the Constitution. *See Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148, 28

S. Ct. 34, 35, 52 L. Ed. 143 (1907). More recently, the Sixth Circuit held that the Constitution guarantees plaintiffs the right of meaningful access to the courts, the denial of which is established where a party engages in pre-filing actions which effectively covers-up evidence and actually renders any state court remedies ineffective. *See Swekel v. City of River Rouge*, 119 F. 3d 1259, 1262, (6th Cir. 1997), *cert. denied*, 522 U.S. 1047, 118 S. Ct. 690, 139 L. Ed. 2d 636 (1998)." .....143 F. 3d at 1223:

"{S}ee *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S. Ct. 1598, 1605-06, 26 L. Ed. 2d 142 (1970) (in order to satisfy color of state law requirement under civil conspiracy theory, plaintiff need only have shown that there was an understanding between civilian and officers to deprive plaintiff of her rights).

## VI.

## SIXTH CLAIM FOR DEPRIVATION OF PLAINTIFFS' EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT, EXCESSIVE FINE, UNDER COLOR OF STATE LAW

101.    Paragraphs 1 through 100 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

102.    Plaintiffs' Sixth Claim against All Defendants for deprivation of Eighth Amendment right to be free from cruel and unusual punishment, excessive fine, under color of state law by home invasion robbery to damage and steal Plaintiff's property, which presents a claim for which the JURY can award damages and relief under the Eighth Amendment.

103.    In Plaintiffs' situation the State actually refused them any appeal unless they paid **$868,000** dollars up front to the state who stole their legally owned property.

## VIII.

## SEVENTH CLAIM FOR CONSPIRACY TO COMMIT DEPRIVATION OF RIGHTS UNDER COLOR OF STATE LAW IN VIOLATION OF 18 U.S.C. §§ 241 AND 242

104.    Paragraphs 1 through 103 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

105.    Plaintiff's Seventh Claim for conspiracy to commit deprivation of rights under color of state law in violation of 18 U.S.C. §§ 241 and 242 for conspiracy to file false charges, commit perjury, subornation perjury which presents a claim for which the jury can award damages against all defendants and relief pursuant to *Kalina v. Fletcher*, 118 S. Ct. 502, 504, n. 14 (1997), quoting:

*Held*:    Section 1983 may create a damages remedy against prosecutor for making false statements of fact in an affidavit supporting an application for an arrest warrant, since such conduct is not protected by the doctrine of absolute prosecutorial immunity. Pp. 516-510.

n. 14.    We noted that:

"{C}omplaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause. Given malice and the lack of probable cause, the complainant enjoyed no immunity. The common law thus affords no support for petitioner." *Malley v. Briggs*, 475 U.S. 335, 340-341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986) (footnote omitted).

Such an arrest warrant was issued for John Frasca despite the fact that he committed no crime, everything he owned had been taken from him by the State without notice, without due process, without just compensation by the same people who had conducted the unconstitutional search prior to gaining a warrant using Fruit of the Poisonous Tree Information. That John & Heidi Frasca did not shoot the thieves attempting to steal their property is to their credit for the law is clear on this point and says:

"Citizens may resist unlawful arrest to the point of taking an arresting officer's life if necessary." *Plummer v. State*, 136 Ind. 306. This premise was upheld by the Supreme Court of the United States in the case: *John Bad Elk v. U.S.*, 177 U.S. 529. The Court stated: "Where the officer is killed in the course of the disorder which naturally accompanies an attempted arrest that is resisted, the law looks with very different eyes upon the transaction, when the officer had the right to make the arrest, from what it does if the officer had no right. What may be murder in the first case might be nothing more than manslaughter in the other, or the facts might show that no offense had been committed."

"An arrest made with a defective warrant, or one issued without an affidavit, or one that fails to allege a crime is within jurisdiction, and one who is being arrested, may resist arrest and break away. If the arresting officer is killed by one who is so resisting, the killing will be no more than an involuntary manslaughter." *Housh v. People*, 75 111. 491; reaffirmed and quoted in *State v. Leach*, 7 Conn. 452; State v. Gleason, 32 Kan. 245; *Ballard v. State*, 43 Ohio 349; *State v Rousseau*, 241 P. 2d 447; *State v. Spaulding*, 34 Minn. 3621.

"When a person, being without fault, is in a place where he has a right to be, is violently assaulted, he may, without retreating, repel by force, and if, in the reasonable exercise of his right of self defense, his assailant is killed, he is justifiable." *Runyan v. State*, 57 Ind. 80; Miller v. State, 74 Ind. 1. "These principles apply as well to an officer attempting to make an arrest, who abuses his authority and transcends the bounds thereof by the use of unnecessary force and violence, as they

do to a private individual who unlawfully uses such force and violence." *Jones v. State*, 26 Tex. App. I; *Beaverts v. State*, 4 Tex. App. 1 75; *Skidmore v. State*, 43 Tex. 93, 903. John Frasca is currently resisting his unlawful arrest by a judge and court who have never had jurisdiction because of the original unconstitutional search and the original VOID/Blank warrant. He is being made a fugitive by those persons who violated his U.S. Constitutional rights.

IX.

## EIGHTH CLAIM FOR DEPRIVATION OF RIGHTS BY BRIBERY, FRAUD AND SWINDLES WITH INTENT TO DEFRAUD PLAINTIFFS' OF THEIR INTANGIBLE RIGHT TO HONEST SERVICES

106.    Paragraphs 1 through 105 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

107.    Plaintiff's Eighth Claim for deprivation of rights by bribery, fraud and swindles with intent to defraud plaintiff of their property against All Defendants, which presents a cognizable claim for which the jury can award damages.

X

## NINETH CLAIM FOR CONSPIRACY BETWEEN CIVILIANS AND GOVERNMENT TO VIOLATE PLAINTIFFS' CIVIL RIGHTS UNDER COLOR OF LAW IN VIOLATION OF TITLE 42 U.S.C. §§ 1983 AND 1985(3)

108.    Paragraphs 1 through 107 are hereby incorporated herein as if fully set forth herein. pursuant to FRCP Rule 10.

109.    Plaintiff's Ninth Claim for conspiracy between civilians and government to violate Plaintiffs' Civil Rights under color of State law in violation of Title 42 U.S.C. §§ 1983 and 1985(3) against All Defendants which presents a claim for which the jury can award damages and relief pursuant to *Scheuer v. Rhodes, supra.*

Approximately 80 citizens worked in conjunction with the government to steal the Frascas' legally owned property.

## DAMAGES AND PRAYER FOR RELIEF

110.    As a proximate and natural result of All Defendants' conspiracy to injure the Frascas, all defendants did commit actions, and omissions, including those of their agents, officers, employees, and citizens working with agents, officers, and employees who were acting in conspiracy and joint participation under color of official right, or under color of state law as governmental actors and private

actors, plaintiff Heidi Frasca and John Frasca have been subjected to injuries and have suffered, and more likely than not, will suffer the following damages until remedy is provided under the law

**WHEREFORE**, the plaintiff respectfully moves for the following relief jointly and severally against all of the defendants your Honor:

      a.      Return of all property taken from the Frascas in the same condition as when taken;

      b.      Compensatory damages for plaintiff in the amount of $900,000,000 (nine hundred million dollars U.S. currency or gold bullion whichever has the greater value at the time of payout);

      b.      Punitive damages for the plaintiffs against the defendants in an amount to be determined at trial;

      c.      Costs and attorneys' fees, pursuant to 42 U.S.C. § 1988, involved in maintaining this action;

      d.      Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

TRIAL BY JURY DEMANDED

      In accordance with the provisions of Rule 38(b), 39, Fed.R.Civ.Pro., Plaintiff hereby demands a trial by jury of all issues so triable.

                                       Respectfully submitted,

Dated: November 19, 2007

*[signature: Heidi Frasca]*

Heidi Frasca, Petitioner, In Propria Persona, NonAttorney Litigant, Whistleblower, / Discriminated Against Disenfranchised Sovereign Person / Victim )
35 Paucek Road
Buxton, Maine 04093
Tel: 603-447-9201

*John is unavailable to sign as explained in letter to Clerk of Court*

John Frasca, Petitioner, In Propria Persona, NonAttorney Litigant, Whistleblower, / Discriminated Against Disenfranchised Sovereign Person / Victim-)
35 Paucek Road
Buxton, Maine 04093
Tel: 603-447-9201

## COMPLAINT VERIFICATION

CITY OF                    )
                           )
STATE OF MAINE             )


I, Heidi Frasca and I, John Frasca being duly sworn, hereby deposes and says:

We are the Plaintiffs herein.  We have read the foregoing Verified Complaint pages 1-34 and believe to the best of our knowledge the contents thereof and the same is true to our knowledge, except as to matters therein stated on information and belief, and as to those matters we believe it to be true.

_____
Heidi Frasca

*John is Unavailable to sign as explained in letter to Clerk*

_____
John Frasca

State of Mine
County of Cumberland


Subscribed & sworn to before me this 19th day of November, 2007.
Heidi Frasca personally appeared before me on 19 November 2007.


Notary Public

SUZANNE R. SERBER
Notary Public, Maine
My Commission Expires April 29, 2011

# Table of Contents

**Appendix A**        **United States Postal Receipts**


**Appendix B**        **VOID WARRANT  (with NO AFFIDAVITS OR COMPLAINT ATTACHED)  so void and blank that it said CANINES but they took land lines telephones, a horse, a steer, parrots, lizards, rabbits, computers, nursing college books belongings to my children not named on the warrant, stamped mail, every file in my home, private files, taxes, bank records, every computer in my home, private book collections and much more from our kennel building.**


**Appendix C**        **VOID AB INITIO**


**Appendix D**        **Bill from the state for $868,000.00 or our appeal could not go forward**


**Appendix E**        **Order from Judge Hornby**


**Appendix F**        **Carol Murphy's response to Judge Hornby**


**Appendix G**        **Judge Singal's letter to us**

**Appendix A**

**United States Postal Receipts**



STATES
SERVICE

**Intranet Item Inquiry - Domestic**

| | |
|---|---|
| Postage | $ .58 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.38 |

Postmark Here

Sent To  *Mike Grovo, Police Officer*

Street, Apt. No., or PO Box No.
City, State, ZIP+4

**Service Calculation Acceptance**
**Date/Time: 08/09/2007 14:53**

**City:** BUXTON              **State:** ME
**City:** BUXTON              **State:** ME

**Anticipated Delivery Date:** 08/10/2007

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 11:28 | BUXTON, ME 04093 | 030SHJA931 |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 06:56 | GORHAM, ME 04038 | 030SHJC148 |
| ACCEPT OR PICKUP | 08/09/2007 14:53 | BUXTON, ME 04093 | 030SHJM671 |

**Enter Request Type and Item Number:**

**Quick Search**              **Extensive Search**

Explanation of Quick and Extensive Searches

**Submit**

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

08 0107

# FILED

### JAN 1 8 2008

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

Postage | 58

Certified Fee | 2.65

Return Receipt Fee
(Endorsement Required) | 2.15

Restricted Delivery Fee
(Endorsement Required) |

Total Postage & Fees | $ 5.38

Sent To     Police Dept.

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

**Intranet Item Inquiry - Domestic**

**Service Calculation Acceptance**
**Date/Time: 08/09/2007 14:56**

| | | |
|---|---|---|
| **City:** BUXTON | **State:** ME |
| **City:** BUXTON | **State:** ME |

**Anticipated Delivery Date:** 08/10/2007

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 11:28 | BUXTON, ME 04093 | 030SHJA931 |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 06:56 | GORHAM, ME 04038 | 030SHJC148 |
| ACCEPT OR PICKUP | 08/09/2007 14:56 | BUXTON, ME 04093 | 030SHJM671 |

Enter Request Type and Item Number:

Quick Search          Extensive Search

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

**Go to the Product Tracking System** Home Page.



D STATES
SERVICE

Intranet Item Inquiry - Domestic

Service Calculation Acceptance
Date/Time: 08/09/2007 14:53

58
2.05
2.15

5.38

**City:** BUXTON    **State:** ME

**City:** BUXTON    **State:** ME

Unit T
Street, Apt. No.,
or PO Box No.
City, State, ZIP

Chef of Police
185 Portland Rd
Buxton ME 04093

93

93

**Anticipated Delivery Date:** 08/10/2007

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 11:28 | BUXTON, ME 04093 | 030SHJA931 |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 06:56 | GORHAM, ME 04038 | 030SHJC148 |
| ACCEPT OR PICKUP | 08/09/2007 14:53 | BUXTON, ME 04093 | 030SHJM671 |

Enter Request Type and Item Number:

Quick Search          Extensive Search

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

**D STATES
SERVICE**

**Intranet Item Inquiry - Domestic**

*.58*
*265*
*2·15*

*538*

**Service Calculation Acceptance
Date/Time: 08/09/2007 14:55**

Mail To: Jean Harmon, Chairman Selectmen    3

| | **City:** BUXTON | **State:** ME |
|---|---|---|
| 3 | **City:** BUXTON | **State:** ME |

**Anticipated Delivery Date: 08/10/2007**

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 11:28 | BUXTON, ME 04093 | 030SHJA931 |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 06:56 | GORHAM, ME 04038 | 030SHJC148 |
| ACCEPT OR PICKUP | 08/09/2007 14:55 | BUXTON, ME 04093 | 030SHJM671 |

**Enter Request Type and Item Number:**

**Quick Search        Extensive Search**

Explanation of Quick and Extensive Searches

**Submit**

*Version 1.0*

Inquire on multiple items.

**Go to the Product Tracking System** Home Page.

**STATES
SERVICE**

**Intranet Item Inquiry - Domestic**

| | | |
|---|---|---|
| Certified Fee | .58 | |
| Return Receipt Fee (Endorsement Required) | 2.65 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | 2.15 | |
| Total Postage & Fees | $ 5.38 | |

Sent To *Buxton Town Offices*

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, June 2002           See Reverse for Instructions

**Service Calculation Acceptance
Date/Time: 08/09/2007 14:54**

| | | |
|---|---|---|
| 3 | **City:** BUXTON | **State:** ME |
| 3 | **City:** BUXTON | **State:** ME |

**Anticipated Delivery Date:** 08/10/2007

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 11:28 | BUXTON, ME 04093 | 030SHJA931 |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 06:56 | GORHAM, ME 04038 | 030SHJC148 |
| ACCEPT OR PICKUP | 08/09/2007 14:54 | BUXTON, ME 04093 | 030SHJM671 |

Enter Request Type and Item Number:

Quick Search          Extensive Search

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

.58
265
2.15

Christine Frasier

5.58

**D STATES**
**SERVICE**

**Internet Item Inquiry - Domestic**

**Service Calculation Acceptance**
**Date/Time: 08/09/2007 14:56**

| City: AUGUSTA | State: ME |
| City: BUXTON | State: ME |

**Anticipated Delivery Date:** 08/10/2007

**Firm Book ID:** 5103 0SHJ_L968_1913 9690

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 10:51 | AUGUSTA, ME 04333 | 030SHJL968 |
| | Firm Name: STATE HOUSE WCOPY | | |
| | Recipient: 'J GIROUX' | | |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 08:55 | AUGUSTA, ME 04330 | 030SHJL968 |
| ACCEPT OR PICKUP | 08/09/2007 14:56 | BUXTON, ME 04093 | 030SHJM671 |

**Enter Request Type and Item Number:**

Quick Search          Extensive Search

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

Certified Fee  2.65

Return Receipt Fee
(Endorsement Required)  2.15

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees  $ 5.38

Sent To  *NORMA WORLEY*  3

Street, Apt. No.;
or PO Box No.  3

City, State, ZIP+4

**) STATES**
**SERVICE**

**Intranet Item Inquiry - Domestic**

**Service Calculation Acceptance**
**Date/Time: 08/09/2007 14:54**

**City:** AUGUSTA          **State:** ME

**City:** BUXTON          **State:** ME

**Anticipated Delivery Date:** 08/10/2007

**Firm Book ID:** 5103_0SHJ_L968_1913_9690

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 10:51 | AUGUSTA, ME 04333 | 030SHJL968 |
|  | Firm Name: STATE HOUSE WCOPY |  |  |
|  | Recipient: 'J GIROUX' |  |  |
|  | Request Delivery Record |  |  |
|  | View Delivery Signature and Address |  |  |
| ARRIVAL AT UNIT | 08/10/2007 08:55 | AUGUSTA, ME 04330 | 030SHJL968 |
| ACCEPT OR PICKUP | 08/09/2007 14:54 | BUXTON, ME 04093 | 030SHJM671 |

**Enter Request Type and Item Number:**

**Quick Search**          **Extensive Search**

Explanation of Quick and Extensive Searches

**Submit**

*Version 1.0*

Inquire on multiple_items.

Go to the Product Tracking System Home_Page.

D STATES
SERVICE

Intranet Item Inquiry - Domestic

### Service Calculation Acceptance
### Date/Time: 08/09/2007 14:54

**City:** AUGUSTA          **State:** ME

**City:** BUXTON          **State:** ME

*(handwritten: 58, 265, 2.15, 5.38)*

*(handwritten: Seth Bradstreet III)*          3

13

**Anticipated Delivery Date:** 08/10/20   7

**Firm Book ID:** 5103_0SHJ_L968_1913 9690

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 10:51 | AUGUSTA, ME 04333 | 030SHJL968 |
| | Firm Name: STATE HOUSE WCOPY | | |
| | Recipient: 'J GIROUX' | | |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 08:57 | AUGUSTA, ME 04330 | 030SHJL968 |
| ACCEPT OR PICKUP | 08/09/2007 14:54 | BUXTON, ME 04093 | 030SHJM671 |

Enter Request Type and Item Number:

Quick Search          Extensive Search

Explanation of Quick and Extensive Searches

Submit

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

Postage $ .58

Certified Fee 2.65

Return Receipt Fee
(Endorsement Required) 2.15

Restricted Delivery Fee
(Endorsement Required)

Total Postage & Fees $ 5.38

Item To *Atty. General Steven Rowe* 3

Street, Apt. No.;
or PO Box No. 13

City, State, ZIP+4

**D STATES
L SERVICE**

## Intranet Item Inquiry - Domestic

### Service Calculation Acceptance
### Date/Time: 08/09/2007 14:55

**City:** AUGUSTA          **State:** ME

**City:** BUXTON          **State:** ME

**Anticipated Delivery Date:** 08/10/2007

**Firm Book ID:** 5103 0SHJ L968_1913_9690

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 08/10/2007 10:51 | AUGUSTA, ME 04333 | 030SHJL968 |
| | Firm Name: STATE HOUSE WCOPY | | |
| | Recipient: 'J GIROUX' | | |
| | Request Delivery Record | | |
| | View Delivery Signature and Address | | |
| ARRIVAL AT UNIT | 08/10/2007 08:55 | AUGUSTA, ME 04330 | 030SHJL968 |
| ACCEPT OR PICKUP | 08/09/2007 14:55 | BUXTON, ME 04093 | 030SHJM671 |

**Enter Request Type and Item Number:**

**Quick Search          Extensive Search**

Explanation of Quick and Extensive Searches

**Submit**

*Version 1.0*

**Inquire on** multiple items.

**Go to the Product Tracking System** Home Page.

Received & Filed
BIDDEFORD DISTRICT COURT

AUG 2 7 2007

Appendix B

VOID WARRANT (it stated CANINES yet they took landline telephones, every computer in the house including those belonging to my children not named on the warrant, a horse, a steer, a rabbit, parrots, lizards, stamped mail, bank statements, every file in the home, personal telephone books, private expensive book collections, 35 years worth of breeding records and registration records, medicines, micro-chipping system worth $2000.00, cages, crates, grooming supplies, dishes given to my daughter by her grandmother over many years, our personal pets that were 12 and 13 years old leaving us devastated, all of our digital cameras including those belonging to the kids and more.

# STATE OF MAINE

DISTRICT COURT
Location _____Beddfrd_____
Docket No. _____

## SEARCH WARRANT
### (M. R. Crim. P. 41)

TO: Any officer authorized by law to execute this search warrant. On the basis of the

_____2_____ Affidavit(s) by:

State Veterinarian/ Humane Agent Christine Fraser__dated, _____August 17, 2007_____;

Officer Michael Grovo of the Buxton Police Dept. __dated, ____August 17, 2007_____;

_____ dated, _____;

which affidavit(s) is/ are attached to the original hereof and made a part thereof to be filed in the

District Court;

_____ Evidence given under oath/ affirmation by:

_____ dated, _____;

_____ dated, _____;

which evidence was recorded on tape no.(s) _____ to be filed in the

District Court;

I am satisfied that there is probable cause to believe that there are grounds for the issuance of a

search warrant. You are therefore commanded to search the place(s) and/ or person(s) described

below for the property described below and, if the property is found, to seize such property

and prepare a written inventory of the property seized.

#### Place(s) or person(s) to be searched:

The property of Heid Frasca DOB 4/4/55 and John Frasca DOB 4/5/54 located at 35 Paucek
Road, in the Town of Buxton. The aforementioned property is further described as having the
following buildings: 1) 24'x 48' single story double wide trailer with a 10' x 16' deck. 2) One
apartment building 26' x 61'. 3) 12' x 61' mobile home with a 6' x 12' attached deck and 6' x 6'
attached shed. The mobile home sits on top of the apartment building. 4) 134' x 54' tan dog

Received & Filed
BIDDEFORD DISTRICT COURT
AUG 17 2007

08 0107

**FILED**

JAN 1 8 2008

NANCY MAYER WHITTINGTON, CLERK

kennel building with 42' x 22' attached room and attached runs and pens 5) Any other structures, including, but not limited to, outbuildings and truck body 6) Any vehicles belonging to either Heidi or John Frasca. The residence is located, when traveling northeast on Narragansett Trail (Rt 202) toward Boucher Ln, turn right onto Long Plains Road (Rt 22), travel .2 miles and turn left onto Paucek Road.

<u>Property or article(s) to be searched for:</u>

Evidence of the crime of cruelty to animals (17 MRSA section 1031), including, but not limited to, any live, dead, and unborn dogs and puppies which have been found to be deprived of necessary sustenance, necessary medical care and/or humanely clean conditions, samples of feed, water, fecal samples, bedding, equipment, cleaning supplies, medication, caging, video and photographs of the animals and their living environments and paperwork regarding the purchase, sales, care, births, deaths, breeding, feeding, medical treatment and ownership of the animals, as well as any computers on which such records are maintained.

<u>Name of owner or occupant of premises, if known:</u>

John and Heidi Frasca

This warrant shall be executed between the hours of 7:00 A.M. and 9:00 P.M. and shall be returned, together with a written inventory, within 10 days of the issuance hereof, to the District Court of Maine in ___Biddeford___ _Maine_____.

Issued at _Biddeford, Maine_ in the County of __York____ this _17th_ day of _August_, 200_7_.

_Marilyn E. Stead_____
Judge, Maine District Court
~~Justice of the Peace~~

Received & Filed
BIDDEFORD DISTRICT COURT

AUG 17 2007

A true copy,
ATTEST _Kathryn L. Jones_
Clerk of Courts

**Appendix C**

**VOID AB INITIO**

# JUDICIAL NOTICE

All officers of the court for State of Maine District Court, Biddeford, Maine are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States of America Constitution and the common law authorities of Haines v Kerner, 404 U.S. 519, Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001).

In re Haines: pro se litigants (Defendant is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. In re Platsky: court errs if court dismisses the pro se litigant (Defendant is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings. In re Anastasoff: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according the rule of precedent. See Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

Heidi Frasca and John Frasca reserve all rights, none waived and they reserve the right to add claims, as they become known to them. Heidi Frasca and John Frasca are Sovereign Persons coming into the court under the Thirteenth Amendment to the Constitution of the United States of America.

Date: August 22, 2007

*John Frasca*

John Frasca, Whistleblower, Discriminated Against Sovereign Person, Victim

*Heidi Frasca*

Heidi Frasca, Whistleblower, Discriminated Against Sovereign Person, Victim

Pancek Road, Buxton, ME 04093

Tel: 207-929-5111

Received & Filed
BIDDEFORD DISTRICT COURT

AUG 22 2007

08 0107

**FILED**

JAN 18 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

I do not give up or release any of my rights as a sovereign person, none are waived, and I reserve the right to add claims, as they become known to me.

# JUDICIAL NOTICE

All officers of the court for State of Maine District Court, Biddeford, Maine are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States of America Constitution and the common law authorities of Haines v Kerner, 404 U.S. 519, Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001).

In re Haines: pro se litigants (Defendant is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. In re Platsky: court errs if court dismisses the pro se litigant (Defendant is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings. In re Anastasoff: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according the rule of precedent. See Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a motion to dismiss or for summary judgment, Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647.

Heidi Frasca and John Frasca reserve all rights, none waived and they reserve the right to add claims, as they become known to them.  Heidi Frasca and John Frasca are Sovereign Persons coming into the court under the Thirteenth Amendment to the Constitution of the United States of America.

Date: August 22, 2007

_____

John Frasca, Whistleblower, Discriminated Against Sovereign Person, Victim

_____

Heidi Frasca, Whistleblower, Discriminated Against Sovereign Person, Victim

Pancek Road, Buxton, ME  04093

Tel:  207-929-5111

I do not give up or release any of my rights as a sovereign person, none are waived  and I reserve the  right to add claims, as they become known to me.

1   names and information had been blackened out. The United States Constitution provides that

2   anyone accused has the right to face and question their accuser.

3        Assistant Attorney General Mark Randlett told Worley to get her act together and told her

4   she could not present what was in fact no evidence. Additionally, as the Court already knows,

5   the State of Maine in conducting a "Hearing" was already in violation of the Frasca's Due

6   Process rights under the United States Constitution because the Frasca's have a right to a Trial by

7   Jury as the licensing issue could have put them out of business thus taking away their livelihood

8   and any controversy involving $20 or more requires due process with a Trial by Jury.

9        Seth Bradstreet III Department of Agriculture, and Norma Worley, Director of the

10  Animal Welfare Department sent Christine Frasier and an unknown woman animal welfare agent

11  plus an armed police officer  Mike Grovo from the Buxton Police Station to conduct an armed

12  home invasion and unconstitutional search against the Frascas despite the fact that the

13  controversy between the Frascas and the State of Maine had not yet been resolved.

14       The Frascas, tired of the harassment by Worley's people had prominently posted a

15  Constitutional Federal No Trespassing sign at the entrance to their long driveway. As the Court

16  knows, such a sign cannot be crossed without a warrant. When the Frasca's were confronted

17  with the trio of criminal trespassers immediately outside their kennel, they told them to leave.

18  Officer Mike Grovo refused. Instead he kept the Frascas under illegal detention and said he

19  would not leave their private property until they showed him a driver's license proving who they

20  were. All the while, Frasier, the unknown female agent and Officer Mike Grovo were

21  conducting an unconstitutional visual search of the Frasca's property, kennel and home (an

22  unconstitutional "Fishing Expedition" which is expressly forbidden under the United States

23  Constitution and the Federal laws.

24       As the Court knows when such an unlawful, unconstitutional "Fishing Expedition" has

25  taken place, the State may not then get a warrant to search or seize any property from the

I do not give up or release any of my rights as a sovereign person, none are
waived  and I reserve the  right to add claims, as they become known to me.

1    Frasca's legally owned property.

2    The fact that the Frasca's had posted their Constitutional Federal No Trespassing Sign at

3    the entrance driveway to their property knowing that a warrant signed by a judge is required to

4    pass by it meant that they had every expectation of privacy in that driveway which then came

5    under the protection of the Curtilage Doctrine.

6    The Frascas filed a complaint against all involved in this armed home invasion and illegal

7    search and filed a Notice of Intent to Sue dated on or about the 9th of August 2007 against each

8    person and department involved in this unconstitutional invasion and unconstitutional/illegal

9    search of their property.

10    Searches, Seizures and Immunities, Vol. #1, Second Edition by Joseph A. Varon pub.

11    1974, The Bobbs-Merrill Co., Inc., Lib. Of Congress Catalog Card No. 73-20923, Chapter VIII,

12    "Issuance of Search Warrant", Execution and Enforcement of Search Warrant Page 504 which

13    states: "Another very important act or omission on the part of an executing officer that could

14    well invalidate the service of a search warrant appears where a search is made of a person, place

15    or premises prior to the execution of the writ.  The time element in this instance controls the

16    holding as to the validity of the search.  It is evident that where the search is made before the

17    warrant is served, the said search will be deemed to have been conducted without benefit of

18    warrant or process."

19    Searches, Seizures and Immunities, Vol. #1, Second Edition by Joseph A. Varon pub.

20    1974, The Bobbs-Merrill Co., Inc., Lib. Of Congress Catalog Card No. 73-20923, Chapter V,

21    Classification of Searches – Search Warrants", Section 2, Searches and Seizures Without Search

22    Warrant, Page 281 it states:  "Where a defendant contends that a seizure was made in violation of

23    his constitutional rights, and establishes that an arrest was made without warrant, or that his

24    private premises were entered and a seizure made without benefit of search warrant, a prima

25    facie case of violation of constitutional rights has been established and the burden then rests

I do not give up or release any of my rights as a sovereign person, none are
waived  and I reserve the  right to add claims, as they become known to me.

1  **Potenz Corp. v. Petrozzini**, 170 Ill. App. 3d 617, 525 N.E. 2d 173, 175 (1988). In instances

2  herein, the law has stated that the orders are **void ab initio** and not voidable because they are

3  already **void**.

4     There is a misconception by some attorneys and judges that only a judge may declare an

5  order **void**, but this is not the law: (1) there is no statute nor case law that supports this position,

6  and (2) should there be any case law that allegedly supported this argument, that case would be

7  directly contrary to the law established by the U.S. Supreme Court in **Valley v. Northern Fire &**

8  **Marine Ins. Co.**, 254 U.S. 348, 41 S. Ct. 116 (1920) as well as other state courts, e.g. by the

9  Illinois Supreme Court in **People v. Miller**. Supra. A party may have a court vacate a **void** order,

10  but the **void** order is still **void ab initio**, whether vacated or not; a piece of paper does not

11  determine whether an order is **void**, it just memorializes it, makes it legally binding and voids out

12  all previous orders returning the case to the date prior to action leading to void ab initio.

13

14     This principle of law was stated by the U.S. Supreme Court as "Courts are constituted by

15  authority and they cannot go beyond that power delegated to them. If they act beyond that

16  authority, and certainly in contravention of it, their judgments and orders are regarded as

17  nullities. They are not voidable, but simply **VOID, AND THIS IS EVEN PRIOR TO**

18  **REVERSAL.**" [Emphasis added]. **Vallely v. Northern Fire and Marine Ins. Co**., 254 U.S.

19  348, 41 S. Ct. 116 (1920). See also **Old Wayne Mut. I. Assoc. v. McDonough,** 204 U.S. 8, 27

20  S.Ct. 236 (1907); **Williamson v. Berry**, 8 How. 495, 540, 12 L. Ed, 1170, 1189, (1850); **Rose v.**

21  **Himely**, 4 Cranch 241, 269, 2 L.Ed. 608, 617 (1808).

22

23     Pursuant to the **Vallely** court decision, a **void** order does not have to be reversed by any

24  court to be a **void** order. Courts have also held that, since a **void** order is not a final order, but is

25  in effect no order at all, it cannot even be appealed. Courts have held that a **void** decision is not

I do not give up or release any of my rights as a sovereign person, none are
waived and I reserve the right to add claims, as they become known to me.

1    in essence a decision at all, and never becomes final. Consistent with this holding, in 1991, the

2    U.S. Supreme Court stated that, "Since such jurisdictional defect deprives not only the initial

3    court but also the appellate court of its power over the case or controversy, to permit the

4    appellate court to ignore it. ...[Would be an] unlawful action by the appellate court itself."

5    **Freytag v. Commissioner**, 501 U.S. 868 (1991); **Miller**, supra. Following the same principle, it

6    would be an unlawful action for a court to rely on an order issued by a judge who did not have

7    subject-matter jurisdiction and therefore the order he issued was **Void ab initio**.

8

9         A void order may be challenged in any court, at any time, and even by third parties. A

10   void order has no legal force or effect. As one court stated, a void order is equivalent to a blank

11   piece of paper.

12        A judge does not have any discretion, but a duty, to know the law and to comply with the

13   law, when the law has been ruled upon by a higher court. People v. Gersch, 135 Ill.2d 384, 553

14   N.E.2d 281 (1990); Agricultural Transp. Ass'n. v. Carpentier, 2 Ill.2d 19, 116 N.E.2d 863 (1963).

15   Any act contrary to the above would be an action without lawful authority, a violation of the

16   Constitution and of the judge's oath. A judge has no discretion to engage in a war against the

17   Constitution. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401 (1958). The judge would be acting

18   without subject-matter jurisdiction, and as stated below, would be engaged in an act of treason.

19        All Orders issued without subject-matter jurisdiction are void ab initio, all orders based

20   on a void order are void ab initio, all orders obtained through fraud upon the court are void ab

21   initio, all orders obtained without proper service are void ab initio, as well as all orders obtained

22   under other circumstances which have been stated in caselaw to be void, are void ab initio.

23

24                          INTERFERENCE WITH INTERSTATE COMMERCE

25        The Seventh Circuit Court of Appeals has previously ruled that whenever any judge

I do not give up or release any of my rights as a sovereign person, none are
waived  and I reserve the  right to add claims, as they become known to me.

unlawfully interferes with a person's right to conduct interstate commerce, the judge is guilty of interference with interstate commerce. These Respondents' right to conduct interstate commerce without any restriction has been interfered with by Judge Marilyn Stavros.

**WRIT OF RELIEF.**

**1983 VIOLATION OF RIGHTS THE DEMAND IS $15,000,000.00 PER DUE PROCESS VIOLATION PER Estate of Macias v. Lopez s AND THE RETURN OF ALL SEIZED PROPERTY.**

VIOLATION OF THE CONSTITUTION

While a Judge may issue orders to control his court, he has no lawful authority to issue any order which violates the Supreme Law of the Land. The First Amendment to the U.S. Constitution states that all entities have the mandatory right of an adequate, complete, effective, fair, full meaningful and timely access to the court. The Fifth and Fourteenth Amendment guarantees Due Process and Equal Protection to all. "No state shall deprive any person of life, liberty **or property**, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." United States Constitutional Amendment XIV. Any other Court or entity insisting to uphold an illegal order would be in violation of the US Constitution.

**PRESERVATION  OF  PLAINTIFF'S**

**INALIENABLE  RIGHTS**

In Propria Persona, WHISTLEBLOWERS, Discriminated Sovereign Persons, Victims Heidi Frasca and John Frasca, state that they have never, do not now & will never waive their inalienable Civil, Constitutional &/or Human Rights. Further Heidi Frasca and John Frasca have never, do not now & will never transfer their inalienable rights to anyone, any person, any entity, etc..

In fact they preserves all of their rights especially their right to file other, further & additional supplemental appeals, petitions, motions, exhibits, items, affidavits, declarations,

I do not give up or release any of my rights as a sovereign person, none are waived  and I reserve the  right to add claims, as they become known to me.

pleadings, composite exhibits, affirmations, documentation, complaints, letters of assistance, notices of claim, lawsuits, & the like with this court &/or other courts including International &/or Military / Article 3 courts &/or with the media, newspapers, talk shows, the Court of Public Opinion, Federal / State agencies / Court of Claims, officials, etc. that they deem necessary & as the circumstances & interest of justice may require / demand / mandate &/or force in order for Heidi Frasca, John Frasca, to finally get non-biased, non-prejudicial, substantive & procedural due process of law, their inalienable Civil, Constitutional & Human Rights, etc. that have & continue to be feloniously, unconstitutionally & conspiratorially denied to Heidi Frasca, and John Frasca.

These aforementioned felonious, unconstitutional & conspiratorial denials, First Amendment Retaliation " racketeering / domestic terrorist crimes, etc. have endlessly & relentlessly occurred unabated throughout the past 3 Plus Years overall & especially throughout the past eleven ( 15 ) months [ filing date: May 2006 ] in the State of Maine's Animal Welfare Organized Criminal " Racketeering " Enterprise .

## INTRODUCTION

1) The Constitution of the United States:

Article. I. Section. 3. 7. Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law.

2) SUPREMACY CLAUSE - "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art. VI, Paragraph 2." Stone v. City and County of San Francisco, 968 F.2d 850, 862 (9th Cir. 1992), cert. denied, 113 S. Ct. 1050 (1993).

I do not give up or release any of my rights as a sovereign person, none are waived and I reserve the right to add claims, as they become known to me.

3)     A Void Ab Initio, is a order violating Constitutional law.

A voidable order is an order that must be declared void by a judge to be void; a void

order is an order issued without jurisdiction by a judge and is void ab initio and does not

have to be declared void by a judge to be void. Only an inspection of the record of the

case showing that the judge was without jurisdiction or violated a person's due process

rights, or where fraud was involved in the attempted procurement of jurisdiction, is

sufficient for an order to be void. Potenz Corp. v. Petrozzini, 170 Ill. App. 3d 617, 525

N.E. 2d 173, 175 (1988). In instances herein, the law has stated that the orders are void ab

initio and not voidable because they are already void.

4)     Amendment XIII

Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime
whereof the party shall have been duly convicted, shall exist within the United States, or
any place subject to their jurisdiction.
Section 2.  Congress shall have power to enforce this article by appropriate legislation.

5)     Amendment V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a
presentment or indictment of a Grand Jury, except in cases arising in the land or naval
forces, or in the Militia, when in actual service in time of War or public danger; nor shall
any person be subject for the same offence to be twice put in jeopardy of life or limb; nor
shall be compelled in any criminal case to be a witness against himself, nor be deprived
of life, liberty, or property, without due process of law; nor shall private property be
taken for public use, without just compensation.

6)     U.S. v. Hotal. 143 F/3d 1223 (9th Cir. 1998)
To comply with Fourth Amendment, anticipatory search warrant must either on its face
or on the face of the accompanying affidavit clearly, expressly, and narrowly specify the
triggering event.  Consent to search that is given after illegal entry is tainted and invalid
under the Fourth Amendment.  Plainview doctrine did not apply to seizure of evidence
from defendants residence after officers conducted initial search based on invalid
anticipatory search warrant.  Plain-view doctrine does not apply unless the initial entry is
lawful pursuant to a valid warrant.  The county is liable for its agents/employees stealing
anything without probable cause on a tainted warrant that fails to narrowly list things
with particularity that are connected with a crime, and that fails to have an attached
affidavit from a victim injured in his or her business or property. State and federal law
protects the unalienable right to own property/livestock, so the county is liable for its

I do not give up or release any of my rights as a sovereign person, none are
waived  and I reserve the  right to add claims, as they become known to me.

1    employees fabricated charges and pretextual search without probable cause.

2    7)    People v. Camacho, 23 Cal. 45h 824; 98 Cal. Rptr. 2d 232; 3 P. 3d 878 (2000):  Police
3    observation from non-public area constitutes unlawful search.  The County is liable for
      Fourth Amendment violations, and has no immunity when its employees trespass upon
4    areas that members of the public cannot be said to have been implicitly invited.  No such
      implicit public invitation exists in a side yard, back yard, or neighbor's yard for county
5    employees or anybody else to conduct invasion of privacy and/or pretextual search
      without probable cause to inventory livestock or other property by peeking over or
6    through fences, even chain-link fences, which are there to exclude the eyes of strangers
      and trespassers.

7
8    8)    Camara v. Municipal Court, 387 U.S. 523, 18 L.ed. 2d 930, 87 S. Ct. 1727:
      The basic purpose of the Fourth Amendment is to safeguard the privacy and security of
9    individuals against arbitrary invasions by governmental officials; the Amendment thus
      gives concrete expression to a right of the people which is basic to a free society.  The
10   guaranty against unreasonable searches and seizures contained in the Fourth Amendment
      is applicable to the states by reason of the due process clause of the Fourteenth
11   Amendment.  The protection of the Fourth Amendment against unreasonable searches
      and seizures is not limited to a situation in which an individual is suspected of criminal
12   behavior.  The County is liable for violations of the Fourth, Fifth and Fourteenth
      Amendments by their agents/employees for suspecting that a citizen is a criminal because
13   he or she happens to own and raise livestock for their own use.  The County needs to
      remember the hundreds of innocent citizens who were released in the Rampart scandal,
14   because corrupt city and county employees fabricated charges and committed perjury.

15   9)    See v. City of Seattle, 387 U.S. 541, 18 L.Ed. 2d 943, 87 S. Ct. 1737:
      {I}t was held that the Fourth Amendment forbids warrantless inspections of commercial
16   structures as well as private residences.  The search of private commercial property, as
      well as the search of private houses, is presumptively unreasonable if conducted without
17   a warrant.  Again, if there is no victim, there is no crime.  The county would be liable for
      violating the Fourth Amendment in allowing any of its agents or employees to conduct
18   warrantless inspections to search for livestock and other property on residences.

19   10)   Hanlon v. Berger, 526 U.S. 808, 143 L.Ed. 2d 978, 119 S. Ct. 1706:
20   It is a violation of the Fourth Amendment for media to be present during the execution of
      a search warrant.  The County is liable and has no immunity for using the local media to
21   invade the privacy of, and slander fowl and livestock owners while falsely representing
      the County's racketeering enterprise is lawful to facilitate raids on other livestock owners
22   for the proceeds of the specified unlawful activity prohibited under Title 18 Sect. 1962
      Racketeering Influenced and Corrupt Organizations Act.
23
24   11)   Steagald v. United States, 68 L. Ed. 2d 38 Held: 2.
      The search in question violated the Fourth Amendment, where it took place in the
25   absence of consent or exigent circumstances.  (a) Absent exigent circumstances or

I do not give up or release any of my rights as a sovereign person, none are
waived  and I reserve the  right to add claims, as they become known to me.

consent, a home may not be searched without a warrant (c) A search warrant requirement will not significantly impede effective law enforcement efforts. No warrant is required is required to apprehend a suspected felon in a public place. Moreover, the exigent-circumstances doctrine significantly limits the situations in which a search warrant is needed. And in those situations in which a search warrant is necessary, the inconvenience incurred by the police is generally insignificant. In any event, whatever practical problems there are in requiring a search warrant, they cannot outweigh the constitutional interest at stake in protecting the right of presumptively innocent people to be secure in their homes from unjustified, forcible intrusions by the government. The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. As we have often explained, the placement of this checkpoint between the Government and the citizen implicitly acknowledges that an officer engaged in the often competitive enterprise of ferreting out crime, Johnson v. United States, 333 U.S. 10, 13-15 (1948), at 14 may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individuals interests in protecting his own liberty and the privacy of his home. Warantless seach or arrest can ONLY occur IN A PUBLIC PLACE during hot pursuit. In all other cases, a fair, neutral and detached judicial officer determines from the complaint that a warrant should issue based upon the commission of a felony. This is where the public's ignorance is used by robbers posing as code enforcement.....

12)  **West Virginia State Board of Education et al. v. Barnett et al., 319 U.S. 624, 63 S. Ct. 1178:**
The United States Government was set up by the consent of the governed, and the Bill of Rights denies those in power any legal opportunity to coerce that consent. The Fourteenth Amendment as applied to the states protects the citizen against the state itself and all of its creatures. One's right to life, liberty and property and other fundamental rights may not be submitted to vote, and they depend on the outcome of no election. The Supreme Court said that if the State cannot take away any inalienable right, the city or county cannot either.

13)  **Carrera v. Bertaini, 63 C.A. 3d 721; 134 Cal. Rptr. 14:**
{I}mpoundment of an owner's farm animals without prior notice or hearing, and without a hearing in the superior court was unlawful and the owner was entitled either to have animals returned or their reasonable value. The due process clause of the Fourteenth Amendment requires some form of notice and hearing. The hearing must have taken place before the property is taken.

14  **Jones v. Mayer Co., 392 U.S. 409 (1968)** (Argument & Summation)
Private property is owned and controlled by private individuals. There is no monetary or proprietary interest that a government at any level has in controlling property belonging to a private individual. The property owner decides with whom he/she wishes to negotiate, procure a contract, dispose of or improve property. The property owner has guaranteed full control over his property and no ordinance, law, or person under the color of law, is to interfere with, violate or deprive the property owner this Civil Right.

I do not give up or release any of my rights as a sovereign person, none are waived and I reserve the right to add claims, as they become known to me.

15) <u>Beech Grove Investment v. Michigan Civil Rights Commission (Argument & Summation) M.C.L.A. Const. 1963 art. 5 Section 29</u>
The government cannot force a private property owner to enter a contract with another. The property owner is free to negotiate his/her own contract and dispose of his/her private property as he/she chooses. The property owner has full control over his/her property.

16   <u>Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 120 L. Ed. 2d 798</u>: There are a number of non-economic interests in land, such as interest in excluding strangers from one's land, the impairment of which will invite exceedingly close scrutiny under takings clause (5th Amendment) if protection against physical appropriations of private property was to be meaningfully enforced, the governments power to redefine the range of interests included in the ownership of property was necessarily constrained by constitutional limits. If, instead, the uses of private property were subject to unbridled, uncompensated qualification under the police power, the natural tendency of human nature {would be} to extend the qualification more and more until at last private property disappeared. These considerations give birth to the oft cited maxim that, while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. Where permanent physical occupation of land is concerned, we have refused to allow the government to decree it anew without compensation no matter how weighty the asserted public interests involved. Unless just compensation is offered, the city or county is committing fraud, theft, racketeering and terrorism if it wants to exert acts of ownership or control private property and livestock ownership rights. It is illegal to impose public policy upon private land; to do so constitutes a takings for which the City of County are liable for compensating the owner for his loss, no matter how small the intrusion.

17) <u>George M. Wallace v. David Hays</u> (Argument & Summation)
<u>In this case which was heard in the United States Court of Appeals, Sixth Circuit</u>, it was ruled that a judge is not immune from being sued in his/her official capacity under <u>42 U.S.C. Sec. 1983, Civil Action for Deprivation of Rights</u>. When civil rights are violated, persons acting in their official capacities can be sued, even judges.

18) <u>Owen v. City of Independence, 445 U.S. 622 (1980)</u> as heard by the United States Court of Appeals for the Eighth Circuit, the court ruled that A municipality has no immunity from liability under 1983 flowing from its constitutional violations and may not assert the good faith of its officers as a defense to such liability. <u>Pp. 635-658.</u>

19) By its terms, 1983 "creates a species of tort liability that on its face admits of no immunities." <u>Imbler v. Pachtman, 424 U.S. 409, 417</u>. Its language is absolute and unqualified, and no mention is made of any privileges, immunities, or defenses that may be asserted. Rather, the statute imposes liability upon "every person" (held in <u>Monell v. New York City Dept. of Social Services, 436 U.S. 658</u>, to encompass municipal corporations ) who, under color of state law or custom, "subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights or immunities secured by the Constitution and laws." And this expansive sweep of <u>1983's</u> language is confirmed by its legislative history. <u>Pp. 635-636. {445 U.S. 622, 623}.</u>

I do not give up or release any of my rights as a sovereign person, none are
waived and I reserve the right to add claims, as they become known to me.

1  I declare under penalty of perjury the forgoing is true and correct.  I, Heidi Frasca and
2  John Frasca do not give up or release any of my rights.

3  Signed_____ Date  August 22, 2007
       **John Frasca**

4  Signed _____ Date August 22, 2007
5      **Heidi Frasca**

6      **Sui Juris, Whistleblowers, Sovereign Persons, Heidi Frasca and John Frasca**

7                    CERTIFICATE  OF  MAILING

8      I, Heidi Frasca and John Frasca, certify that we hand carried a true and correct copy of

9  the above and foregoing **VOID AB INITIO** or mailed it via first class pre paid mail at no cost to

10 the following at :

11 Clerk of Court                        Judge Marilyn Stavros
12 State of Maine Biddeford District Court   York County District Court
   25 Adams Street                     11 Chases Pond Road
13 Biddeford, ME  04005              York, ME  03909

14

15           Prepared and submitted by: _____

16                                    Heidi Frasca

17                                    _____

18                                    John Frasca

19                                    Whistleblowers, Discriminated Against,
                                       Disenfranchised Sovereign Persons, Victims
20                                    Paucek Road

21                                    Buxton, ME  04093

22                                    Tel: 207-929-5111

23

24

25

                              16 of 16
           I do not give up or release any of my rights as a sovereign person, none are
           waived  and I reserve the  right to add claims, as they become known to me.

**Appendix D**

**Bill from the State of Maine**



# MAINE DEPARTMENT OF AGRICULTURE
# FOOD AND RURAL RESOURCES
### OFFICE OF THE COMMISSIONER
### ANIMAL WELFARE PROGRAM

**Seth H. Bradstreet, III**

John Elias Baldacci
Governor
Commissioner

### 28 STATE HOUSE STATION
### AUGUSTA, MAINE   04333-0028
*Norma J. Worley, Director*
email: norma.j.Worley@maine.gov

Telephone: (207) 287-3846

*Fax: (207) 624-5028*

October 19, 2007

Kathryn L. Jones, Clerk
Biddeford District
25 Adams Street
Biddeford, ME 04005

Ref. **STATE OF MAINE YORK ss , STATE OF MAINE ANIMAL WELFARE PROGRAM, MAINE DEPARTMENT OF AGRICULTURE v. JOHN AND HEIDI FRASCA DOCKET NO. 07-SW-035**

Dear Ms. Jones:

In accordance with Judge Foster's Order dated October 10, 2007, I am hereby submitting, by affidavit, the Department's estimation of the expenses for the care and support of all animals subject to the September 26th possession order. In reviewing the October 10th order I noted that the Court may have mistakenly referred to 17 MRSA section 1024(6)(D) as the statute requiring the provision of security upon the appeal of a possession order. I believe the proper section is 1021(6)(D), and have cited that statute in my affidavit.

The following documents supporting the estimate are also included:

1. A copy of the lease for the building that the Animal Welfare Program was required to obtain in order to house approximately 50% of these animals.  Note:  This lease was written for 3 months with a 3-month option.  If this appeal were to take longer than 9 months it may be necessary to find other housing at additional costs.
2. A copy of the receipt for the animal holding pens and food/water bowls required to care for the animals.  This purchase was required in order to provide the necessary safety and care required for this large number of animals
3. A copy of 7 M.R.S.A. 3919-C Animal Held Pending Court Decision, which sets by statute the monetary compensation an animal shelter, is entitled to receive from the Animal Welfare Program to provide food and shelter for any animals placed in their facility by the State of Maine.

Your assistance in this matter is greatly appreciated.  If the Court requires any further documentation I will be glad to provide as requested.

Respectfully submitted,

*Norma J. Worley*

Norma J. Worley
Director

Attachments
cc: John and Heidi Frasca

08 0107

# FILED

JAN 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 1 9 2007

STATE OF MAINE
YORK, ss.

DISTRICT COURT
BIDDEFORD
Docket No. 07-SW-035

STATE OF MAINE ANIMAL WELFARE
PROGRAM, MAINE DEPARTMENT OF
AGRICULTURE

          Plaintiff

       v.

JOHN AND HEIDI FRASCA

         Defendants

)
)
)
)
)
)
)
)
)
)
)

AFFIDAVIT OF NORMA WORLEY

I, Norma Worley, being first duly sworn, do hereby depose and say:

1. I am the Director of the Department of Agriculture, Food and Rural Resources' Animal Welfare Program.

2. This affidavit is submitted in accordance with the Court's Order dated October 10, 2007, directing the Animal Welfare Program, within 14 days of the date of the Court's Order, to provide the Court and the Defendants with an estimate for the care and support of all the animals subject to a Possession Order issued by the Court on September 26, 2007, pending the appeal of that Order, together with a statement of what security in accordance with Title 17 section 1021 6 (D) would be satisfactory to the satisfy the Program that such payment would be made.

3. The following estimates are based on the assumption that it will take 9 months for the appeal to be resolved:

<u>State of Maine Animal Welfare Costs:</u>

Rental of facility for housing 137 dogs
       $5,416.66 a month for 9 months =          $487,499.94
Projected utilities, including heat, water, and trash
       $300.00 a month X 9 =              $ 2700.00

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

| | |
|---|---|
| Projected medical costs 271 dogs @ $200 each = | $54,000.00 |
| Purchase of pens to hold 137 dogs = | |
|      Aubuchon Hardware (Portland) | $4999.75 |
|      Knights Farm Supply (Augusta) | $4575.00 |
|      Knights Farm Supply (Augusta) | $18,825.00 |
| Purchase of water/food dishes for 137 dogs = | $1,561.95 |
| Temporary help hired to care for dogs: | |
|      8 shelter workers @$8.50 an hour X 9 months | $73,440.00 |
|      1 Shelter supervisor @ 11.00 an hour X 9 months | $15,840.00 |
|      1 Clerk @ $11.00 an hour X 9 months | $15,840.00 |

State Costs Subtotal      $679,280.64

**Animal Welfare Society**

Old Holland Rd.

Kennebunk, ME

| | |
|---|---|
| 99 dogs @ $5.00 per day X 9 months = | $133,650.00 |
| 1 horse @ $10.00 per day X 9 months = | $ 2700.00 |
| 1 steer @ $8.00 per day X 9 months = | $ 2160.00 |
| | $138,510.00 |

Animal Refuge League
Stroudwater Rd.
Westbrook, ME

| | |
|---|---|
| 35 dogs @ $5.00 per day X 9 months = | $47,250.00 |
| 2 rabbits @ $2.00 per day X 9 months = | $ 1080.00 |
| | $48,330.00 |

| | |
|---|---|
| Bird Facility | |
| 2 birds @ $1.00 per day X 9 months = | $540.00 |
| Reptile Facility | |
| 2 reptiles @ $2.00 per day = | $1080.00 |

Shelters Subtotal      $188,460.00

**Projected Estimate for the continuing care of these animals for nine (9) months:**

$867,740.64

4. It is the Department's position that the total amount of the estimated costs for the care and support of the animals should be placed in an escrow or trust account sufficient to

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007



the availability of the funds for the payment of such costs as necessary and appropriate



assure the availability of the funds for the payment of such costs as necessary and appropriate

under the law.

Dated: 10\19\07

Respectfully submitted,

Norma J. Worley

Norma Worley, Director
Maine Department of Agriculture, Food
and Rural Resource, Animal Welfare
Program

STATE OF MAINE
KENNEBEC, ss.

Personally appeared before me the above-named Norma Worley, this 19th day of
October 2007, and made oath that the above-stated facts are true and correct based upon
his own personal knowledge.

Before me,

Melanie Littlefield

Notary Public/Attorney at Law

Melanie Littlefield
Notary Public
State of Maine
My Commission Expires
April 7, 2012

Print Name

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

Title 7: AGRICULTURE AND ANIMALS
Part 9: ANIMAL WELFARE (HEADING: PL 1987, c. 383, §3 (new))
Chapter 720: RABIES PREVENTION AND SHELTER PROVISIONS (HEADING: PL 1991, c. 779, §26 (new); 1997, c. 704, §2 (amd); 2001, c. 363, §2 (rpr); 2003, c. 405, §7 (rpr); 2005, c. 422, §2 (rpr))

**§3919-C. Animal held pending court decision**   When an animal shelter holds an animal at the request or with the approval of the department pending an investigation or disposition by the court of an alleged violation of Chapter 739 or Title 17, Chapter 42, the shelter is entitled to receive from the department monetary compensation in accordance with this section for the period for which food and shelter are furnished to the animal.

1. Compensation for dogs and cats.  Compensation for a dog or cat is $5.00 a day.  Compensation for female cat or dog with a litter that has not been weaned is $8 a day.

2. Equines.  Compensation for an equine is $10 a day.

3. Livestock.  Except for equines, fowl and rabbits, compensation for a livestock animal is between $5.00 and $8.00 a day as determined by the department based on the size of the animal.

4. Other animals.  Compensation for a rabbit is $2 a day.  Compensation for a bird, including poultry is $1 a day.  Compensation for other animal is as determined by the department.



STATE OF MAINE
DEPARTMENT OF ADMINISTRATIVE & FINANCIAL SERVICES
BUREAU OF GENERAL SERVICES
DIVISION OF LEASED SPACE
BURTON M. CROSS BUILDING
4TH FLOOR, 77 STATE HOUSE STATION
AUGUSTA, MAINE
04333-0077

JOHN ELIAS BALDACCI
GOVERNOR

REBECCA M. WYKE
COMMISSIONER

WILLIAM B. LEET
DIRECTOR

**To:** Audrey Shorty
Department of Agriculture, Animal Welfare

**Station #** 28

**From:** Theresa A. Bilodeau
BGS, Division of Leased Space

**Date:** September 25, 2007

**Re:** Sublease # 2275

---

Enclosed is <u>your</u> original of the Sublease for Warehouse Storage Space between Happy Tails, Inc. and the Department of Agriculture, Animal Welfare located at 119 Bishop Street, Portland, Maine.

If you have any questions, I can be reached at 624-7357.

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

9/07/07

Sublease

Warehouse Storage Space

between

Happy Tails, Inc.

and

THE STATE OF MAINE
Department of Administrative & Financial Services
Bureau of General Services
on behalf of the

DEPARTMENT OF AGRICULTURE, ANIMAL WELFARE

This INDENTURE, made and entered into this 7th day of September 2007 by and between Happy Tails Inc., whose mailing address is 119 Bishop Street, Portland, Maine 04102 for themselves, their heirs, executors, administrators, successors and assigns (hereinafter called the "Sublessor") and THE STATE OF MAINE, Department of Administrative & Financial Services, Bureau of General Services, whose address is 77 State House Station, Augusta, Maine 04333-0077 on behalf of the Department of Agriculture, Animal Welfare (hereinafter called the "Department"),

**WHEREAS,** Sublessor is the tenant under a certain Lease dated May 25, 2006 ("Over-Lease") with BJG, LLC and WJG, LLC ("Over-Lessor") for the building located at 119 Bishop Street, Portland, Maine as described in the Over-Lease (Exhibit A).

**NOW THEREFORE,** in consideration of the mutual covenants hereinafter set forth, Sublessor and Department agree as follows, WITNESSETH:

    1. **GRANT:** The parties hereto, for the consideration hereinafter mentioned, covenant and agree that the Sublessor does hereby rent to the Department the following premises, viz:

    2. **PREMISES:** A portion of the building located at 119 Bishop Street, Portland, Maine 04102 consisting of approximately 13,000 square feet.

    3. **TERMS:** To use said above described premises beginning on September 6, 2007 and ending on December 6, 2007.

    4. **RENEWAL:** The Department shall have the option to renew this sublease for three (3) terms of three (3) months or any portion thereof, after the above term, and upon the same covenants, conditions and rent.

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

9/07/07

5. **NON-ASSIGNABILITY**: The Department shall not assign this agreement in any event, and shall not sublet the demised premises, except to a desirable tenant with the written approval of the Sublessor.

6. **HOLDOVER**: At termination date of this lease or any extension or renewal thereof, the Department may continue in possession on a month-to-month basis by paying the specified monthly rental until one party shall give the other written notice of termination. Such notice shall be given at least fifteen (15) days before the premises are to be vacated. Should such an extension expire prior to the end of a month, the rental shall be apportioned to the date specified in the notice.

7. **RENTAL**: YIELDING AND PAYING THEREFORE,

| YEAR | S.F. | COST P.S.F | ANNUAL RENT (if for 12 months) | MONTHLY RENT |
|------|------|-----------|-------------------------------|--------------|
| 9/06/07-12/06/07 | 13,000 | $5.00 | $65,000.00 | $5,416.6666 |

in arrears, in accordance with the State's usual accounting procedures, commencing with the first month of occupancy as established by the provisions of paragraph 3.

**NOTE**: The monthly rent includes $80.00 for one parking garage pass.

8. **COVENANTS OF THE DEPARTMENT**: The Department does hereby covenant and agree with the Sublessor that it will:

    (a)   Pay the said rent at the times and in the manner aforesaid;

    (b)   Use and occupy said premises in a careful and proper manner;

    (c)   Not use the premises for any purpose other than a governmental purpose;

    (d)   Be responsible for any and all loss or damage caused to any and all personal property of the Department or under the control of the Department located, in, on, or about the demised premises, unless the loss or damage is as a result of the negligence or willful acts or omissions of the Sublessor; and

    (e)   Install its own telephone and internet connections.

9. **COVENANTS OF THE SUBLESSOR**: And the Sublessor, on its part, and at its own expense, covenants and agrees with the Department that it will:

    (a)   Maintain and keep the premises in tenantable condition, including heating, ventilation and air conditioning system;

    (b)   Allow the State agency to occupy during the aforesaid periods;

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

Sub-Lease #2275

9/07/07

(d)  Furnish janitorial/custodial services to the premises including trash removal;

(e)  Pay total charges for all utilities and operating expenses; and

(f)  Allow Department personnel to use common bathroom.

**10.  STATE HELD HARMLESS**: The Sublessor agrees to indemnify, defend and save harmless the Department, its officers, agents and employees from any and all claims and losses accruing or resulting to any person, except employees of the Department who may be injured on the rented premises, due to the negligence or willful acts or omissions of the Sublessor.

**11.  TERMINATION**: In the event of a material violation of the terms of this agreement by either party, and upon failure of that party to bring itself into compliance with the terms of this agreement upon 30 days notice of the violation by the other party, such other party shall have the right to terminate this agreement upon a further 30 days notice. The failure of either party to give notice of a material violation shall in no event constitute a waiver of any of the terms of this agreement.

Either party has the right to terminate this lease at any time with a 30 day notice of termination.

**12.  NOTICES**: Any notices required or permitted hereunder shall be in writing and shall be sent certified mail, return receipt requested, addressed to Sublessor or Department, as the case may be, at the addresses specified herein below or at such address as a party hereto may have therefore specified by written notice hereunder.

| | |
|---|---|
| Sublessor:<br>Happy Tails , Inc.<br>119 Bishop Street<br>Portland, ME 04102<br><br>Contact: Tom Coward<br>Tru Brit Realty<br>17 Woodbury St.<br>South Portland, ME  04106<br><br>Telephone: 207-329-8637 | Department of Administrative and Financial<br>Services, Bureau of General Services<br>77 State House Station<br>Augusta, ME 04333-0077<br><br>Contact: William B. Leet<br>Telephone: 207-624-7345 |

**13.  QUIET ENJOYMENT**: Upon payment, by the Department, of the rent herein provided and upon observance and performance of all covenants, terms and conditions on the Department's part to be observed and performed, the Department substantially shall be entitled to the beneficial use and peaceful enjoyment of the premises for the term thereof without hindrance or interruption by Sublessor or any other person or persons, regardless of whether they are claiming by, through, or under the Sublessor.

**14.  AMERICANS WITH DISABILITIES ACT (ADA)**: The premises are to be free of architectural barriers and must comply with all Federal and State laws which protect people

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

9/07/07

with disabilities including, but not limited to, the **Americans with Disabilities Act of 1990 and the Maine Human Rights Act, M.R.S.A., Title 5, Sec. 4551 et seq.**

15.  **NON-APPROPRIATION**:  Notwithstanding any other provision of this Lease Agreement, if the State of Maine ("State") does not receive sufficient funds to fund this Lease Agreement and other obligations of the State, if funds are de-appropriated, or if the State does not receive legal authority to expend funds from the Maine State Legislature or Maine courts, then the Department is not obligated to make payments under this Lease Agreement.  In the event of non-appropriation of funds as described in this section, Department may terminate this Office Lease upon thirty (30) days written notice to the Sublessor.

[THIS SPACE LEFT BLANK INTENTIONALLY]

Received & Filed
BIDDEFORD DISTRICT COURT

OCT 19 2007

Sub-Lease #2275

9/07/07

In WITNESS WHEREOF, this sub-lease has been duly executed by the parties hereto as of the day and year first above written.

HAPPY TAILS, INC.    **SUBLESSOR**

by _____    9-13-07
Name                               Date

Then personally appeared the above named _Frank Billings_ whose

title is _President_ and acknowledged the foregoing

instrument to be his/her free act and deed.

_____    9/13/2007
Notary Public                      Date

THOMAS S. COWARD
Printed Name

My Commission Expires: _10/30/2009_

**DEPARTMENT OF AGRICULTURE**

_____    9/19/07
Department's Agent                 Date

Then personally appeared the above named _Edwin R Porter_ whose

title is _Deputy Commissioner_ and acknowledged the foregoing

instrument to be his/her free act and deed.

_____    9-19-07
Notary Public                      Date

Kimbalie Lawrence
Printed Name

My Commission Expires: _____
                    Kimbalie Lawrence
                    Maine Notary Public
                    My Commission Expires April 13, 2008

Received & Filed
BIDDEFORD DISTRICT COURT

OCT 19 2007

Sub-Lease #2275

9/07/07

## DEPARTMENT OF ADMINISTRATIVE AND FINANCIAL SERVICES
## BUREAU OF GENERAL SERVICES

_____          9/21/07
William B. Leet, Director of Leased Space      Date

Then personally appeared the above named William B. Leet, Director of Leased Space
and acknowledged the foregoing instrument to be his free act and deed.

_____          9/21/07
Notary Public                Date

Theresa A. Bilodeau
**Notary Public - State of Maine**
My Commission Expires My Commission Expires - Jan. 16. 2014

A true copy,
ATTEST Kathryn L Jones
Clerk of Courts

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

Department of Administrative and Financial Services

Division of Purchases - Procurement Card

74 State House Station, Augusta, ME 04333-0074

Phone (207) 287-2478; Fax (207) 287-4032

OCT 19 2007

BIDDEFORD DISTRICT COURT

Received & Filed

RE18P0907MC1006

Agency:    01A

| Trans Date | Item Description | Account Codes | Merchant Name | City | ST | Amount |
|---|---|---|---|---|---|---|
| **ACCOUNT** | **FRASER, CHRISTINE** | | | | | |
| 9/10/07 | | 014-9461-01-5636 | ME PFR LICENSING ONLIN | GARDINER | ME | 75.00 |
| 9/12/07 | | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | AR | 39.70 |
| 9/12/07 | | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | AR | 27.53 |
| 9/13/07 | | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | AR | 58.05 |
| 9/13/07 | | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | AR | 8.98 |
| | | | | | | 209.26 |
| **Total For FRASER, CHRISTINE** | | | | | | |
| **ACCOUNT** | **WORLEY, NORMA** | | | | | |
| 8/31/07 | | 014-9461-01-5150 | WAL-MART #2046 | AUGUSTA | ME | 36.71 |
| 8/31/07 | | 014-9461-01-5616 | PETCO 1821 63518211 | AUGUSTA | ME | 2,279.76 |
| 8/30/07 | | 014-9461-01-5636 | RITE AID STORE 4135 | GORHAM | ME | 9.62 |
| 8/31/07 | | 014-9461-01-4711 | THE HOME DEPOT 2404 | AUGUSTA | ME | 91.94 |
| 9/1/07 | | 014-9461-01-4711 | THE HOME DEPOT 2404 | AUGUSTA | ME | 40.38 |
| 9/2/07 | | 014-9461-01-4099 | AXE INVESTIGATIONS | TACOMA | WA | 4,322.00 |
| 9/4/07 | | 014-9461-01-5650 | WW GRAINGER 808 | 877-2022594 | MA | 111.96 |
| 9/5/07 | | 014-9461-01-4099 | PRECISION DYNAMICS COR | 8188971111 | CA | 436.78 |
| 9/5/07 | | 014-9461-01-5636 | VTEC TRIPLE S INVESTME | SOUTH PORTLA | ME | 196.00 |
| 9/5/07 | | 014-9461-01-5602 | STAPLES 00103531 | AUGUSTA | ME | 54.92 |
| 9/6/07 | | 014-9461-01-5636 | LABSAFE*1010151043 | 800-356-0783 | WI | 303.58 |
| 9/6/07 | | 014-9461-01-5602 | GAL*GALLS INC | 800-504-0328 | KY | 217.65 |
| 9/7/07 | | 014-9461-01-5616 | HAPPY TAILS | PROTLAND | ME | 1,000.00 |
| 9/6/07 | | 014-9461-01-5650 | WW GRAINGER 616 | 877-2022594 | ME | 203.48 |
| 9/7/07 | | 014-9461-01-4099 | AXE INVESTIGATIONS | TACOMA | WA | 2,304.00 |
| 9/10/07 | | 014-9461-01-4701 | KNIGHTS FARM SUPPLY | AUGUSTA | ME | 18,825.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | THE LEASH CONNECTION | 864-3483647 | SC | 1,561.95 |
| 9/10/07 | 014-9461-01-5616 | AXE INVESTIGATIONS | TACOMA | WA | 1,728.00 |
| 9/10/07 | 014-9461-01-4099 | STAPLES 00103531 | AUGUSTA | ME | 249.80 |
| 9/11/07 | 014-9461-01-5602 | WW GRAINGER 616 | 877-2022594 | ME | 395.65 |
| 9/7/07 | 014-9461-01-5650 | WW GRAINGER 616 | 877-2022594 | ME | 192.78 |
| 9/7/07 | 014-9461-01-5650 | | | | 34,561.96 |

Total For WORLEY, NORMA                                                                34,771.22

Total For RE18P0907MC1006

## PAYMENT DUE FIVE DAYS AFTER INVOICE DATE

Payment by PV 9, code and send to A&C, 14 State House Station

Payment by check to "Treasurer State of Maine" sent to 74 State House Station

Contacts: Progran Administrator, Jill Edwards 287-6436; Billing information, Martha Perry 287-6465

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007
9/19/20

| Date | Account | Vendor | Location | Phone | State | Amount |
|---|---|---|---|---|---|---|
| | | INTERNET | | | | |
| 9/19/07 | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | | AR | 9.78 |
| 9/19/07 | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | | AR | 14.16 |
| 9/18/07 | 014-9461-01-5636 | WALMART COM INTERNET | 800-966-6546 | | AR | 4.99 |
| | | | | | | 739.52 |

Total For FRASER, CHRISTINE

ACCOUNT    SOMERS, ELIZABETH

| Date | Account | Vendor | Phone | State | Amount |
|---|---|---|---|---|---|
| 9/14/07 | 014-9461-01-5602 | OFFICEMAX CT IN 076849 | 800-264-7370 | IL | 355.84 |
| | | | | | 355.84 |

Total For SOMERS, ELIZABETH

ACCOUNT    WORLEY, NORMA

| Date | Account | Vendor | Location | State | Amount |
|---|---|---|---|---|---|
| 9/14/07 | 014-9461-01-4099 | AXE INVESTIGATIONS | TACOMA | WA | 1,728.00 |
| 9/14/07 | 014-9461-01-4711 | AUBUCHON HARDWARE | PORTLAND | ME | 4,999.75 |
| 9/17/07 | 014-9461-01-4099 | AXE INVESTIGATIONS | TACOMA | WA | 2,304.00 |
| 9/19/07 | 014-9461-01-5636 | VTEC TRIPLE S INVESTME | SOUTH PORTLA | ME | 245.00 |
| 9/21/07 | 014-9461-01-4701 | KNIGHT'S FARM SUPPLY | AUGUSTA | ME | 4,575.00 |
| 9/24/07 | 014-9461-01-4099 | AXE INVESTIGATIONS | TACOMA | WA | 2,304.00 |
| 9/20/07 | 014-9461-01-4099 | AXE INVESTIGATIONS | TACOMA | WA | 1,728.00 |
| 9/18/07 | 014-9461-01-5636 | VTEC TRIPLE S INVESTME | SOUTH PORTLA | ME | 196.00 |
| 9/14/07 | 014-9461-01-5636 | LL BEAN MAILORDER | 800-3414341 | ME | 171.03 |
| 9/14/07 | 014-9461-01-5602 | CABELAS.COM *91966673 | 800-2374444 | NE | -113.40 |
| | | | | | 18,137.38 |

Total For WORLEY, NORMA

19,232.74

Total For RE18P0907MC2009

## PAYMENT DUE FIVE DAYS AFTER INVOICE DATE

Payment by PV 9, code and send to A&C, 14 State House Station

Payment by check to "Treasurer State of Maine" sent to 74 State House Station

Contacts: Program Administrator, Jill Edwards 287-6436; Billing information, Martha Perry 287-6465

Received & Filed
BIDDEFORD DISTRICT COURT
OCT 19 2007

**Appendix E**

**Order from Judge Hornby**

# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| CAROL MURPHY, | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CASE NO. 07-MC-118-P-H |
| | ) | |
| JUDGE CHRISTINE FOSTER, | ) | |
| DEFENDANT | ) | |

| | | |
|---|---|---|
| HEIDI FRASCA AND | ) | |
| JOHN FRASCA, | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| v. | ) | CASE NO. 07-MC-119-P-H |
| | ) | |
| JUDGE CHRISTINE FOSTER, | ) | |
| DEFENDANT | ) | |

| | | |
|---|---|---|
| JAIME L. FRASCA, JORDAN M. | ) | |
| FRASCA AND JOHN COREY | ) | |
| FRASCA, | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| v. | ) | CASE NO. 07-MC-120-P-H |
| | ) | |
| JUDGE CHRISTINE FOSTER, | ) | |
| DEFENDANT | ) | |

## ORDER TO SHOW CAUSE

A fee of $350 is required to begin a regular civil case in federal court. 28 U.S.C. § 1914(a). The Clerk's Office has accepted for filing these three factually related cases[1] and has opened them under the Miscellaneous category, therefore

---

[1] All three cases are prompted by state court proceedings under Maine's Animal Welfare Act, 17 M.R.S.A. §§ 1001 et seq. (2006). The State has seized animals and property being operated as J'aime Kennels. Case No. 07mc118 is brought by Carol A. Murphy who states that she had already *(continued on next page)*

**FILED**

*08 0107*

JAN 1 8 2008

NANCY MAYER WHITTINGTON, CLERK

Request for Emergency Writs, Case No. 07mc118, at 1 of 11; Case No. 07mc119, at 1 of 34; Case No. 07mc120, at 1 of 14. I cannot supply missing factual allegations under this standard, but I can and do interpret liberally what they have alleged in order to determine whether it meets the necessary standards for the relief that they have requested or similar relief.

1.    I do not see under the Federal Rules of Civil Procedure how the plaintiffs can pursue their federal requests for replevin or prohibition without a complaint and the necessary filing fee of $350 (except in Case No. 07mc119 where I have permitted the plaintiffs to proceed without payment because of their claimed financial status).

If what they have filed is to be treated as a complaint (pursuant to their request for a liberal reading), then they must pay the full filing fee, and must serve process upon the defendant in accordance with the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 4.  Then they must file a return of process demonstrating that proper service has occurred.  Id. I see nothing in the docket to reveal that any of that has occurred in any of these three cases.

2.    The plaintiffs describe their requests as "Emergency."  Even where there is an emergency, a defendant is entitled to notice of the request and to see the filed papers unless the plaintiffs provide reasons why notice to the defendant should not be required.  (For the types of relief these plaintiffs appear to be seeking concerning seizure of property, Federal Rule of Civil Procedure 64 and Local Rule 64 incorporate state rules.  Maine Rules of Civil Procedure 4A and 4B deal with attachment and trustee process respectively; and Maine Rule of Civil

3

to specific requests for an injunction, as well as other requests for remedies that would decide, preempt, or "prevent utilization of the results" of state proceedings. See Atlantic Coast Line R.R. Co., 398 U.S. at 287; Gloucester Marine Rys. Corp. v. Charles Parisi Inc., 848 F.2d 12, 15 (1st Cir. 1988); 17A Moore's Federal Practice § 121.03 (2006).

In these cases, the plaintiffs are asking me to order State District Judge Christine Foster to do certain things concerning their animals or their claims to animals and (for some of the plaintiffs) their real estate or other personal property. They seek my intervention because they are unhappy with the decisions that Judge Foster (and state officials and a state judge preceding her) made in connection with state proceedings (they refer to Biddeford District docket number 07-SW-35) under Maine's Animal Welfare Act, 17 M.R.S.A. §§ 1001 et seq. (2006), concerning the kennel they have operated, J'aime Kennels:

> We are asking that the United States District Court provide a Writ of Prohibition to stop Judge Christine Foster from giving away our legally owned property to the State, and we are asking that the United States District Court provide a Writ of Replevin so that we may regain possession of the dogs and other property legally owned by us that was taken in the Jaime Kennel racketeering raid.

Case No. 07mc119, at 6 of 34.[2] Replevin and Prohibition both would be, in effect, injunctions against this state judge in the course of her handling those state proceedings.

---

[2] Whatever this document is, there is a problem with its page numbering. At the bottom of the first group of pages, each page is numbered as a page "of 34" pages. After page 11, however, it jumps to "Page 9 of 14" and then there are no more pages. However, the document appears to be complete. The other two cases seek comparable relief to that requested in Case No. 07mc119, partly adjusted to reflect the plaintiffs' different relationship to the property.

they are proceeding with notice or without notice) that would justify such treatment under the Rules I have described.

However, I do emphasize once again the Anti-Injunction Act to the plaintiffs. They may decide (it is their choice at this stage) that their money and efforts would be better spent in the pending state proceedings or in other state proceedings, in light of the statutory limitations on federal court authority. After all, if the Anti-Injunction Act does apply, the cases ultimately will be subject to dismissal upon proper motion by the defendant.

**SO ORDERED.**

**DATED THIS 23RD DAY OF OCTOBER, 2007**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

HEIDI  FRASCA
2 MICHELLE LANE
LONDONDERRY, NH 03053

----------------------------------------------------

**Appendix F**

**Carol Murphy's response to Judge Hornby**

1      **U.S. District Court for Northern District of Maine**

2                      **Bangor Division**

3

4                                        Case No.: 07-MC-118 for
                                         Emergency Writ of Prohibition &
5     Carol Murphy                       Emergency Writ of Replevin Both Filed
                                         on October 12, 2007
6             Petitioner, Pro Se,
                                         **Objection to Order of the**
7     Whistleblower                      **Court;**
                                         **Recusal of Judge for Cause;**
8          and                           **Formal Bill of Exception**
                                         **Notice of Appeal to U.S.**
9     State of Maine et al               **Supreme Court, Washington, D.C.**

10    D. Brock Hornby

11    Norma Worley

12    Christine Fraser

13    Mike Grovo

14    Jody Thomas

15    G. Steven Rowe

16    John Baldacci

17    Seth Bradstreet III

18    Marilyn Stavros

19    Christine Foster

20    Jessica Christensen

21    Mark Lawrence

22    Jane & John Does 1-5000 as they          08 0107

23    become known

24            Respondents                       **FILED**

25    _____          JAN 1 8 2008

                                         NANCY MAYER WHITTINGTON, CLERK
                                                U.S. DISTRICT COURT

COMES NOW Carol Murphy as the Petitioner, Whistleblower, Pro Se and does file this; Objection to order of the court, Motion for Recusal for Cause, under a formal Bill of Exception and Notice of Appeal to the U.S. Supreme Court in Washington, D.C. should this court fail to do its duty and uphold the United States Constitution and abide by the Federal Rules of Law which Judge Hornby has already violated.

Table of Contents

**Table of Authorities** ....................................................... 2

**ORDER REFERANCED** ........................................................... 3

**ISSUE ONE: Failure to Rule in Timely Manner** ................................ 3

**ISSUE TWO: Court Attempting to Create Class Action** ......................... 6

**ISSUE THREE: Competency of Judge Hornby to Hold His Position** ............... 7

**ISSUE FOUR: Judge Hornby Must be Investigated/Recused/Removed for Cause** ..... 7

**ISSUE FIVE:** ............................................................... 10

  **Rights Frozen by Procedure / The Chilling Effect** ....................... 10

  **Abstention is the Exception Not the Rule** .............................. 10

  **How to Deny Rights by Delay** .......................................... 10

**ISSUE SIX: Liability** ...................................................... 11

**ISSUE SEVEN: Notice of Appeal to the United States Supreme Court** .......... 12

## Table of Authorities

## Cases

*United States v. James Daniel Good Real Property, U.S. Supreme Court (92-1180), 510 U.S. 43 (1993)*.. . . . . . . . . . . . . . . . . . . . . . . . . 8

1  *Colorado River Water Conservation Dist. V. United States 424 U.S. 800,813*

2  *(1976)* ........................................................... 8

3  *Harman v Forssenius 380 U.S. 528,534-535(1965)* ........................ 8

4  *Hawaii Housing Authority v Midkiff 467 U.S. 229,236(1984)* ............. 8

5  *Houston v Hill 482 US 451 (1987)* ..................................... 8

6  *Wisconsin v Constantineau, 400 U.S. 433,439 (1971)* ................... 8

7  *Zwickler v Koota 389 US 241, 252 (1967)* ............................. 8

8  *Yates v. Hoffman Estates 209 Fed. Sup. 757 (1962)* ................... 6

9  *Roberts v. State of Maine, 48 F.3d 1287, 1291-1291* .................. 9

10

11  **ORDER REFERANCED**

12  "Order" will mean the order signed by Judge Hornby on October 23rd 2007,

13  (reference attached document #1 Page 13 (& consists of 7 pages with orig

14  numbers 1 thru 7).

15  **ATTACHMENTS**

16  #2 - Biddeford Court Letter dated 10/12/07 (Second Letter Received)(Page 14)

17  #3 - Proofs of Ownership of dogs (3 pages)(Pages 15, 16, 17)

18              **ISSUE ONE: Failure to Rule Within a Timely Manner**

19  In the Order Judge Hornby failed to abide by Federal Rules of Law and rule on

20  the Emergency Writ of Prohibition and Emergency Writ of Replevin within a

21  timely manner.  The Emergency Writs arrived at the court on October 12, 2007

22  yet the judge has still failed to address them as of the 29th of October 2007.

23  Instead, he says he has no authority to grant the Writs and plans to waste

24  another 30 days asking this Petitioner to file a law suit at a cost of $350.

25  Judge Hornby is knowingly, willingly and recklessly obstructing justice and

    shielding the organized criminal racketeering enterprise as five other U.S.

1  District Court judges have done before him.  Those judges are being brought

2  before the U.S. Court of Claims on charges. Additionally, Hornby is in

3  violation of the Code of Judicial Conduct, specifically as set forth in:

4  CANON 1:  A Judge Shall Uphold the Integrity and Independence of the

5  Judiciary;

6  Canon 3A(5): A judge should dispose promptly of the business of the court.

7  Canon 3B(1): A judge should diligently discharge the judge's administrative

8  responsibilities and maintain professional competence in judicial

9  administration.

10  Canon 3C(1)(a): A judge shall disqualify himself or herself in a proceeding

11  in which the judge's impartiality might reasonably be questioned, including

12  but not limited to instances in which the judge has a personal bias or

13  prejudice concerning a party, or personal knowledge of disputed evidentiary

14  facts concerning the proceeding and is to the judge's knowledge likely to be

   a material witness in the proceeding.

15

16  Judge Hornby has knowledge of the actual commission of felonies, conspiracy

   of rights and deprivation of rights under color of law, in violation of 18

17  USC Sections 241;242 and has failed in his duties and obligations to act

18  pursuant to 18 USC, Section 4 Misprision of Felony.

19  In his Order Judge Hornby states:

20      "A fee of $350 is required to begin a regular civil case in federal

21      court."

22  Judge Hornby further states:

23      "1.  I do not see under the Federal Rules of Civil Procedure how the

24  plaintiffs can pursue their federal requests for replevin or prohibition

25  without a complaint and the necessary filing fee of $350. . ."

1   This Petitioner is not entertaining bringing a law suit against anyone in any

2   court situated in Maine.  She has asked for the Writs and plans to bring a

3   law suit against Respondents if they fail to return her stolen property

4   promptly and in perfect condition.  If necessary, she will bring such a law

5   suit in a U.S. District Court outside of the State of Maine which is her

6   right given the violations of her rights by five previous U.S. District Court

7   judges.  Petitioner has provided the federal court and the State court with

8   clear evidence that her legally owned property was stolen by the State

9   organized criminal racketeering enterprise.  Her complaint is clear.  The

10   Emergency Writs are critical as the State judge has ordered Petitioner's

11   stolen property to be given to the State organized criminal racketeering

12   enterprise who stole the property without notice, without a warrant, without

13   charges, without just compensation, without due process, etc.  The State

14   judge has sent to this Petitioner two letters stating that this Petitioner is

15   not a party to any State action.  The State judge has returned all of this

16   Petitioner's filings in State court, refusing to allow them to be docketed.

17   Those filings prove that this Petitioner owns five show quality breed dogs

18   and their breed paperwork that were stolen by the State organized criminal

19   racketeering enterprise without Notice, without a warrant, without a hearing,

20   without just compensation, without any charges against Petitioner.  All State

21   organized criminal racketeering enterprise members involved in this action

22   have ignored this Petitioner and plan to go ahead and neuter/spay, sell,

23   adopt out or kill this Petitioner's property despite the fact that all

24   parties are aware that five of those animals are indisputably the property of

25   this Petitioner.  This Petitioner is simply a CUSTOMER of the kennel from

  which they were stolen.  This is THEFT OF PROPERTY UNDER COLOR OF LAW, AND IT

1  IS RACKETEERING, AND THERE HAVE BEEN DUE PROCESS VIOLATIONS, UNITED STATES

2  CONSTITUTIONAL PROPERTY VIOLATIONS, and those members of the State organized

3  criminal racketeering enterprise who stole this Petitioner's property were

4  trained by DOMESTIC TERRORISTS AND ARE THEMSELVES DOMESTIC TERRORISTS ENGAGED

5  IN AN ONGOING STATE ORGANIZED CRIMINAL RACKETEERING ENTERPRISE AND STATE

6  CONSPIRACY TO COMMIT RACKETEERING TO DEPRIVE PEOPLE OF THEIR LEGALLY OWNED

7  PROPERTY.  There have been thousands of cases in Maine.

8  **ISSUE TWO: Court Attempting to Create Class Action**

9  Per Judge Hornby's order, he is attempting to create a Class Action by

10  lumping this Petitioner's Emergency Writ of Prohibition and Emergency Writ of

11  Replevin with apparent similar requests from other parties.  This Petitioner

12  objects to and will not allow such a coupling of Petitioners.  When a judge

13  exceeds his jurisdiction and grants or denies which is beyond his lawful

14  authority to grant or deny, he has perpetrated a non judicial act. *Yates v.*

15  *Hoffman Estates* **209 Fed. Sup. 757 (1962).** This Petitioner unlike any other

16  Petitioner bringing this issue before the court is not a member of the Frasca

17  family.  In fact Petitioner never met any of these people (other than the

18  conspirators in the State organized criminal racketeering enterprise) prior

19  to August 17, 2007 when she and a friend traveled to the Frasca's kennel in

20  Buxton, Maine to purchase papered show quality dogs for breeding.  This

21  Petitioner was made a party to the State proceedings against the kennel when

22  the State organized criminal racketeering enterprise stole Petitioner's

23  property under color of law and have refused to return it to her.

24  Respondents are now attempting to give the stolen property to the State of

25  Maine via an unconstitutional court order of possession.

1   While other Petitioners may have ambiguities in their request, this

2   Petitioner stands alone in that she is simply a CUSTOMER whose legally owned

3   property was literally stolen by the Respondents.  There can be absolutely no

4   reason for Judge Hornby to issue his Order to show cause when in fact this

5   Petitioner provided the judge with all legal paperwork showing that the five

6   dogs named are the sole legal property of this Petitioner.

7          **ISSUE THREE: Competency of Judge Hornby to Hold His Position**

8   Petitioner must question Judge Hornby's qualifications for his position as a

9   U.S. District Court judge.  Hornby states that he cannot interfere with a

10  State of Maine case because of the "Anti-Injunction Act".  Pursuant to 28 USC

11  Petitioner may remove any civil or criminal action commenced in the State

12  court to the U.S. District Court:

13  ξ1446 Procedure for removal;

14  ξ1443(2) For any act under color of authority derived from any law providing

15  for equal rights, or for refusing to do any act on the ground that it would

16  be inconsistent with such law.

17  Petitioner finds it difficult to believe that such a statement was made by a

18  U.S. District Court judge who has held this job since 1990.  What Hornby is

19  saying is that the Biddeford Maine Court takes precedence over the U.S.

20  District Court when it comes to property issues.  What Hornby is also saying

21  is that the State court can overturn a citizen's property rights as outlined

22  by the United States Constitution and steal from that citizen who the

23  Biddeford Court itself has stated in two letters is not a party to any State

24  Court action.  He is further stating that though he is in possession of all

25  of the paperwork attached to this Petitioner's Objection, that he, Judge

    Hornby, can and has dismissed/overturned/ignored the United States Supreme

1  Court's rulings in **United States v. James Daniel Good Real Estate (92-1180),**

2  **510 U.S. 43 (1993); Colorado River Water Conservation Dist. V. United States**

3  **424 U.S. 800,813 (1976); Forssenius 380 U.S. 528,534-535(1965); Hawaii**

4  **Housing Authority v Midkiff 467 U.S. 229,236(1984); Houston v Hill 482 US 451**

5  **(1987); Wisconsin v Constantineau, 400 U.S. 433,439 (1971)and Zwickler v**

6  **Koota 389 US 241, 252 (1967).**

7  And, Judge Hornby has decided that though there were a myriad of United

8  States Constitutional and due process violations, he is refusing to provide

9  this Petitioner with relief well within his ability to give and Petitioner's

10  right to receive.  He is refusing to uphold the U.S. Constitution which

11  clearly states this Petitioner's property cannot have been taken by any

12  person, county, town, city, state.

13  Hornby states that he has no authority to provide this Petitioner with the

14  Emergency Relief she seeks from the State organized criminal racketeering

15  enterprise.  He further states that his power to provide such relief does not

16  exist because he cannot dictate to the State Court no matter what they do.

17  Color this Petitioner stunned.  It is evident that Judge Hornby is totally

18  unqualified to hold his position because he does not know what his position

19  requires of him nor what he can and cannot rule upon.  How is it possible

20  that after all these years he still does not understand his job?

21  **ISSUE FOUR: Judge Hornby Must Be Investigated/Recused/Removed for Cause**

22  Judge Hornby says in his Order "*A court of the U.S. may not grant an*

23  *injunction to stay proceedings in a state court except as expressly*

24  *authorized by Act of Congress, or where necessary in aid of its jurisdiction,*

25  *or to protect or effectuate its judgments".* If Hornby does not know the basic

law of his position then this Petitioner calls for his immediate removal.

1    What Hornby says he does not know is the following:  **First,** Petitioner's

2    motion for Emergency Writs pertain to PROPERTY RIGHTS which are specifically

3    authorized by the United States Congress when they passed the BILL OF RIGHTS

4    - - specifically the protection of property.  The Due Process Clause provides

5    heightened protection against government interference with certain

6    fundamental rights and liberty and among those fundamental rights specially

7    protected by the Due Process Clause are the specific freedoms protected by

8    the Bill of Rights. Due Process and judicial review ensure that government

9    acts in this sensitive area are done with requisite care. **Roberts v. State of**

10   **Maine, 48 F.3d 1287, 1291-1291** holds that the Due Process Clause of the

11   Constitution prohibits deprivations of life, liberty, or property without

12   "fundamental fairness" through governmental conduct that offends the

13   community's sense of justice, decency and fair play. Whether the unlawful

14   action of Judge Hornby was done by sheer innocence or by deliberate design,

15   the end result is the same. Petitioner has been harmed and denied her right

16   to due process and equal protection under the law. **Second,** as Hornby knows or

17   should know Federal Courts have ORIGINAL jurisdiction of ANY rights violated

18   under the United States Constitution.  **Third,** Judge Hornby knows or should

19   know his powers are granted by the United States Constitution or he and his

20   office would not exist.  **Fourth,** Judge Hornby knows or should know that his

21   jurisdiction is limited to those acts, being that the Constitution is the

22   Supreme Law of the Land.  And **Fifth,** Judge Hornby knows or should know that

23   he is without the authority to "freeze rights by procedure" and that pursuant

24   to 28 USC, sections 1446, 1443 Petitioner may remove any civil or criminal

25   action commenced in the State court to the U.S. District Court.  **Sixth,** Judge

     Hornby's Order is a freezing of rights by procedure, and it falls upon a

1   federal court to act in such a case because abstaining is the exception, not

2   the rule.

3                                   **ISSUE FIVE:**

4              **Rights Frozen by Procedure / The Chilling Effect**

5                                        Or

6              **Abstention is the Exception not the Rule**

7                                        Or

8                      **How to Deny Rights by Delay**

9   **The Chilling Effect** or **Rights Frozen by Procedure** is a very old and accepted

10  rule, in:

11  ***Houston v Hill 482 US 451 (1987):***

12          "*In such case[s] to force the plaintiff who has commenced a federal*

13          *action to suffer the delay of state-court proceedings might itself*

14          *effect the impermissible chilling of the very constitutional right he*

15          *seeks to protect*" quoting; ***Zwickler v Koota 389 US 241, 252 (1967)***

16  As **Abstention is an Exception to the rule, not the rule itself:**

17          "*Abstention is, of course, the exception and not the rule,* **Colorado**

18          **River Water Conservation Dist. V. United States 424 U.S. 800,813**

19          **(1976)**... ('*Where there is no ambiguity in the state statute, the*

20          *federal court should not abstain but should proceed to decide the*

21          *federal constitutional claim*'); **Zwickler v Koota (citing cases). Harman**

22          **v Forssenius 380 U.S. 528,534-535(1965);** *see also* **Hawaii Housing**

23          **Authority v Midkiff 467 U.S. 229,236(1984) (same).** *If the statute is*

24          *not obviously susceptible of a limiting construction, then even if the*

25          *statute has 'never [been] interpreted by a state tribunal ... it is the*

            *duty of the federal court to exercise its properly invoked*

1    *jurisdiction.' **Harman, supra, at 535; see, e.g., Wisconsin v**

2    **Constantineau, 400 U.S. 433,439 (1971).**"

3   It rests incumbent upon the petitioner to show that the delay of state court

4   proceedings would Freeze or make null any proceeding for relief before this

5   court.  It stands in the order of Judge Hornby that **IF** this Petitioner is

6   delayed in recovering her legally owned property that the property will be

7   spayed and neutered making the property unusable for the purpose for which it

8   was purchased, namely breeding.  This constitutes irreversible damage to the

9   property and to the Petitioner.

10                          **ISSUE SIX: Liability**

11   The law provides that where a Petitioner has demanded an Emergency

12   protection/intervention by the court and the court has capriciously failed to

13   provide that protection, should irreparable harm subsequently be done to

14   Petitioner or Petitioner's property as a result of the failure of the judge

15   to act, then the judge is liable for all harm done to Petitioner as a result

16   of the Judge's negligence.  Petitioner may sue for Redress of Grievances.   In

17   the instant case, Petitioner has a very real fear that her property (five

18   dogs) will be given to the state who will spay and neuter them.  Should this

19   irreparable harm come to pass because Judge Hornby has failed to uphold the

20   rule of law, Petitioner will sue for the return of all property, the breed

21   paperwork AND damages for the loss of business income over the lifetime of

22   the animals.  These damages would be in the millions as the suit will be

23   brought under R.I.C.O. racketeering provisions which award treble damages

24   plus the Animal Enterprise Terrorism Act which provides for compensation to

25   recreate the breeding which will take an additional 35 years to recreate.

Further, the R.I.C.O. racketeering act provides for criminal charges to be

Page 11 of 17 - Carol Murphy, All Rights Reserved

1    brought against all parties involved in the State organized criminal

2    racketeering enterprise of 20 years imprisonment per violation.  Judge Hornby

3    will, of course, be named and prosecuted for damages both in the U.S. Court

4    of Claims and in the R.I.C.O. racketeering law suit as it is this

5    Petitioner's contention that Judge Hornby is aiding and abetting the State

6    organized criminal racketeering enterprise.

7         **ISSUE SEVEN: Notice of Appeal to the United States Supreme Court**

8    Judge Hornby knows or should know that he has failed to fulfill the tenants

9    of his job and in so doing he is aiding and abetting racketeers.  Proof of

10   his unsuitability for the position of Judge in a United States District Court

11   lies in his Order to this Petitioner which shows with glaring clarity that he

12   is unaware of basic laws and is unaware of the requirements and limitations

13   of his job. Petitioner will add additional appeals to the United States

14   Supreme Court as she files her Demand for Extraordinary Writ.

15                           Dated this 29th day of October, 2007

16

17                   _____

18                   Carol Murphy
                     248 Lane Road
19                   New Sharon, ME  04955
                     Tel:  207-778-6024

20

21

22

23

24

25

**Appendix G**

**Judge Singal's letter to us**

```
MIME-Version:1.0
From:cmecf@med.uscourts.gov
To:cmecfnef@med.uscourts.gov
Bcc:cmecfnef@med.uscourts.gov
Message-Id:<451917@med.uscourts.gov>
Subject:Activity in Case 1:07-cv-00169-GZS FRASCA et al v. STATE OF MAINE et al
Order
Content-Type: text/html
```

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Maine**

**Notice of Electronic Filing**

The following transaction was entered on 11/15/2007 at 11:54 AM EST and filed on 11/15/2007

**Case Name:**      FRASCA et al v. STATE OF MAINE et al
**Case Number:**    1:07-cv-169
**Filer:**
**Document Number:** 8(No document attached)

**Docket Text:**
ORDER re [7] MOTION for Recusal filed by HEIDI FRASCA; To the extent that this pleading is a motion for my recusal, it is DENIED. Plaintiff is warned that filing of frivolous pleadings may lead to restrictions on further filings. By Judge GEORGE Z. SINGAL. (MSH, )

**1:07-cv-169 Notice has been electronically mailed to:**

**1:07-cv-169 Notice has been delivered by other means to:**

HEIDI FRASCA
35 PAUCEK RD
BUXTON, ME 04093

JOHN FRASCA
35 PAUCEK RD
BUXTON, ME 04093

08 0107

**FILED**

JAN 1 8 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT